# Defendants' Exhibit No. 1

# Marvin Green v. Joseph Stuyveant, Captain, United States Navy, et al.,
## Civil Action No. 06-1434 (RBW)

**NATO On-line library**

Updated: 5 October 2000                    NATO Basic Texts

London,
19 June 1951

Fr. / Rus.

# Agreement

## Between the Parties to the North Atlantic Treaty Regarding the Status of Their Forces

The parties to the North Atlantic Treaty signed in Washington on 4 April, 1949,
Considering that the forces of one Party may be sent, by arrangement, to serve in the territory of another Party;
Bearing in mind that the decision to send them and the conditions under which they will be sent, in so far as such conditions are not laid down by the present Agreement, will continue to be the subject of separate arrangements between the Parties concerned;
Desiring, however, to define the status of such forces while in the territory of another Party;
Have agreed as follows:

**Article I**

1. In this Agreement the expression

    a. 'force' means the personnel belonging to the land, sea or air armed services of one Contracting Party when in the territory of another Contracting Party in the North Atlantic Treaty area in connexion with their official duties, provided that the two Contracting Parties concerned may agree that certain individuals, units or formations shall not be regarded as constituting or included in a 'force' for the purpose of the present Agreement;

    b. 'civilian component' means the civilian personnel accompanying a force of a Contracting Party who are in the employ of an armed service of that Contracting Party, and who are not stateless persons, nor nationals of any State which is not a Party to the North Atlantic Treaty, nor nationals of, nor ordinarily resident in, the State in which the force is located.

    c. 'dependent' means the spouse of a member of a force or a civilian component, or a child of such member depending on him or her for support;

    d. 'sending State' means the Contracting Party to which the force belongs;

    e. 'receiving State' means the Contracting Party in the territory of which

EX 1

    the force or civilian component is located, whether it be stationed there or passing in transit;

   f. 'military authorities of the sending State' means those authorities of a sending State who are empowered by its law to enforce the military law of that State with respect to members of its forces or civilian components;

   g. 'North Atlantic Council' means the Council established by Article 9 of the North Atlantic Treaty or any of its subsidiary bodies authorised to act on its behalf.

2. This Agreement shall apply to the authorities of political sub-divisions of the Contracting Parties, within their territories to which the Agreement applies or extends in accordance with Article XX, as it applies to the central authorities of those Contracting Parties, provided, however, that property owned by political sub-divisions shall not be considered to be property owned by a Contracting Party within the meaning of Article VIII.

**Article II**

It is the duty of a force and its civilian component and the members thereof as well as their dependents to respect the law of the receiving State, and to abstain from any activity inconsistent with the spirit of the present Agreement, and, in particular, from any political activity in the receiving State. It is also the duty of the sending State to take necessary of measures to that end.

**Article III**

1. On the conditions specified in paragraph 2 of this Article and subject to compliance with the formalities established by the receiving State relating to entry and departure of a force or the members thereof, such members shall be exempt from passport and visa regulations and immigration inspection on entering or leaving the territory of a receiving State. They shall also be exempt from the regulations of the receiving State on the registration and control of aliens, but shall not be considered as acquiring any right to permanent residence or domicile in the territories of the receiving State

2. The following documents only will be required in respect of members of a force. They must be presented on demand:

   a. personal identity card issued by the sending State showing names, date of birth, rank and number (if any), service, and photograph;

   b. individual or collective movement order, in the language of the sending State and in the English and French languages, issued by an appropriate agency of the sending State or of the North Atlantic Treaty Organization and certifying to the status of the individual or

      group as a member or members of a force and to the movement ordered. The receiving State may require a movement order to be countersigned by its appropriate representative.

3. Members of a civilian component and dependents shall be so described in their passports.

4. If a member of a force or a civilian component leaves the employ of the sending State and is not repatriated, the authorities of the sending State shall immediately inform the authorities of the receiving State, giving such particulars as may be required. The authorities of the sending State shall similarly inform the authorities of the receiving State of any member who has absented himself for more than twenty-one days.

5. If the receiving State has requested the removal from its territory of a member of a force or civilian component or has made an expulsion order against an ex-member of a force or of a civilian component or against a dependent of a member or ex-member, the authorities of the sending State shall be responsible for receiving the person concerned within their own territory or otherwise disposing of him outside the receiving State. This paragraph shall apply only to persons who are not nationals of the receiving State and have entered the receiving State as members of a force or civilian component or for the purpose of becoming such members, and to the dependents of such persons.

**Article IV**

The receiving State shall either

    a. accept as valid, without a driving test or fee, the driving permit or licence or military driving permit issued by the sending State or a sub-division thereof to a member of a force or of a civilian component; or

    b. issue its own driving permit or licence to any member of a force or civilian component who holds a driving permit or licence or military driving permit issued by the sending State or a sub-division thereof, provided that no driving test shall be required.

**Article V**

1. Members of a force shall normally wear uniform. Subject to any arrangement to the contrary between the authorities of the sending and receiving States, the wearing of civilian dress shall be on the same conditions as for members of the forces of the receiving State. Regularly constituted units or formations of a force shall be in uniform when crossing a frontier.

2. Service vehicles of a force or civilian component shall carry, in addition to their registration number, a distinctive nationality mark.

**Article VI**

Members of a force may possess and carry arms, on condition that they are authorized to do so by their orders. The authorities of the sending State shall give sympathetic consideration to requests from the receiving State concerning this matter.

**Article VII**

1. Subject to the provisions of this Article,

    a. the military authorities of the sending State shall have the right to exercise within the receiving State all criminal and disciplinary jurisdiction conferred on them by the law of the sending State over all persons subject to the military law of that State;

    b. the authorities of the receiving State shall have jurisdiction over the members of a force or civilian component and their dependents with respect to offences committed within the territory of the receiving State and punishable by the law of that State.

2.

    a. The military authorities of the sending State shall have the right to exercise exclusive jurisdiction over persons subject to the military law of that State with respect to offences, including offences relating to its security, punishable by the law of the sending State, but not by the law of the receiving State.

    b. The authorities of the receiving State shall have the right to exercise exclusive jurisdiction over members of a force or civilian component and their dependents with respect to offences, including offences relating to the security of that State, punishable by its law but not by the law of the sending state.

    c. For the purposes of this paragraph and of paragraph 3 of this Article a security offence against a State shall include:

        i. treason against the State;

        ii. sabotage, espionage or violation of any law relating to official secrets of that State, or secrets relating to the national defence of that State

3. In case where the right to exercise jurisdiction is concurrent the following rules shall apply:

    a. The military authorities of the sending State shall have the primary right to exercise jurisdiction over a member of a force or of a civilian component in relation to

      i. offences solely against the property or security of that State, or offences solely against the person or property of another member of the force or civilian component of that State or of a dependent;

      ii. offences arising out of any act or omission done in the performance of official duty.

  b. In the case of any other offence the authorities of the receiving State shall have the primary right to exercise jurisdiction.

  c. If the State having the primary right decides not to exercise jurisdiction, it shall notify the authorities of the other State as soon as practicable. The authorities of the State having the primary right shall give sympathetic consideration to a request from the authorities of the other State for a waiver of its right in cases where that other state considers such waiver to be of particular importance.

4. The foregoing provisions of this Article shall not imply any right for the military authorities of the sending State to exercise jurisdiction over persons who are nationals of or ordinarily resident in the receiving State, unless they are members of the force of the sending State.

5.
  a. The authorities of the receiving and sending states shall assist each other in the arrest of members of a force or civilian component or their dependents in the territory of the receiving State and in handing them over to the authority which is to exercise jurisdiction in accordance with the above provisions.

  b. The authorities of the receiving State shall notify promptly the military authorities of the sending State of the arrest of any member of a force or civilian component or a dependent.

  c. The custody of an accused member of a force or civilian component over whom the receiving state is to exercise jurisdiction shall, if he is in the hands of the sending State, remain with that State until he is charged by the receiving State.

6.
  a. The authorities of the receiving and sending States shall assist each other in the carrying out of all necessary investigations into offences, and in the collection and production of evidence, including the seizure and, in proper cases, the handing over of objects connected with an offence. The handing over of such objects may, however, be made subject to their return within the time specified by the authority delivering them.

  b. The authorities of the Contracting parties shall notify one another of the disposition of all cases in which there are concurrent rights to

exercise jurisdiction.

7.
   a. A death sentence shall not be carried out in the receiving State by the authorities of the sending State if the legislation of the receiving state does not provide for such punishment in a similar case.

   b. The authorities of the receiving State shall give sympathetic consideration to a request from the authorities of the sending State for assistance in carrying out a sentence of imprisonment pronounced by the authorities of the sending State under the provision of this Article within the territory of the receiving State.

8. Where an accused has been tried in accordance with the provisions of this Article by the authorities of one Contracting Party and has been acquitted, or has been convicted and is serving, or has served, his sentence or has been pardoned, he may not be tried again for the same offence within the same territory by the authorities of another Contracting Party. However, nothing in this paragraph shall prevent the military authorities of the sending State from trying a member of its force for any violation of rules of discipline arising from an act or omission which constituted an offence for which he was tried by the authorities of another Contracting Party.

9. Whenever a member of a force or civilian component of a dependent is prosecuted under the jurisdiction of a receiving State he shall be entitled:

   a. to a prompt and speedy trial;
   b. to be informed, in advance of trial, of the specific charge or charges made against him;
   c. to be confronted with the witnesses against him;
   d. to have compulsory process for obtaining witnesses in his favour, if they are within the jurisdiction of the receiving State;
   e. to have legal representation of his own choice for his defence or to have free or assisted legal representation under the conditions prevailing for the time being in the receiving State;
   f. if he considers it necessary, to have the services of a competent interpreter; and
   g. to communicate with a representative of the Government of the sending State and when the rules of the court permit, to have such a representative present at his trial.

10.
   a. Regularly constituted military units or formations of a force shall have the right to police any camps, establishment or other premises which they occupy as the result of an agreement with the receiving State. The military police of the force may take all appropriate measures to ensure the maintenance of order and security on such premises.

   b. Outside these premises, such military police shall be employed only

      subject to arrangements with the authorities of the receiving State and in liaison with those authorities, and in so far as such employment is necessary to maintain discipline and order among the members of the force.

11. Each Contracting Party shall seek such legislation as it deems necessary to ensure the adequate security and protection within its territory of installations, equipment, property, records and official information of other Contracting Parties, and the punishment of persons who may contravene laws enacted for that purpose.

**Article VIII**

1. Each Contracting Party waives all its claims against any other Contracting Party for damage to any property owned by it and used by its land, sea or air armed services, if such damage:

    i. was caused by a member or an employee of the armed services of the other Contracting Party in the execution of his duties in connection with the operation of the North Atlantic Treaty; or

    ii. arose from the use of any vehicle, vessel or aircraft owned by the other Contracting Party and used by its armed services, provided either that the vehicle, vessel or aircraft causing the damage was being used in connection with the operation of the North Atlantic Treaty, or that the damage was caused to property being so used.

    Claims for maritime salvage by one Contracting Party against any other Contracting Party shall be waived, provided that the vessel or cargo salvaged was owned by a contracting Party and being used by its armed services in connection with the operation of the North Atlantic Treaty.

2.
    a. In the case of damage caused or arising as stated in paragraph 1 to other property owned by a Contracting Party and located in its territory, the issue of the liability of any other Contracting Party shall be determined and the amount of damage shall be assessed, unless the Contracting Parties concerned agree otherwise, by a sole arbitrator selected in accordance with sub-paragraph b. of this paragraph. The arbitrator shall also decide any counter-claims arising out of the same incident.

    b. The arbitrator referred to in sub-paragraph a. above shall be selected by agreement between the Contracting Parties concerned from amongst the nationals of the receiving State who hold or have held high judicial office. If the Contracting Parties concerned are unable, within two months, to agree upon the arbitrator, either may request the Chairman of the North Atlantic Council Deputies to select a person with the aforesaid qualifications.

    c. Any decision taken by the arbitrator shall be binding and conclusive upon the Contracting Parties.

    d. The amount of any compensation awarded by the arbitrator shall be distributed in accordance with the provisions of paragraph 5 e. (i), (ii) and (iii) of this Article.

    e. The compensation of the arbitrator shall be fixed by agreement between the Contracting Parties concerned and shall, together with the necessary expenses incidental to performance of his duties, be defrayed in equal proportions by them.

    f. Nevertheless, each Contracting Party waives its claim in any such case where the damage is less than:

| | | | |
|---|---|---|---|
| Belgium: | B. fr. 70,000. | Luxembourg: | L. fr. 70,000. |
| Canada: | $ 1,460. | Netherlands: | Fl. 5,320 |
| Denmark: | Kr. 9,670. | Norway: | Kr. 10,000. |
| France: | F. fr. 490,000. | Portugal: | Es. 40,250. |
| Iceland: | Kr. 22,800. | United Kingdom: | £ 500. |
| Italy: | Li. 850,000. | United States: | $ 1,400. |

Any other Contracting Party whose property has been damaged in the same incident shall also waive its claim up to the above amount. In the case of considerable variation in the rates of exchange between these currencies the Contracting Parties shall agree on the appropriate adjustments of these amounts.

3. For the purposes of paragraphs 1 and 2 of this Article the expression "owned by a Contacting Party" in the case of a vessel includes a vessel on bare boat charter to that Contracting Party or requisitioned by it on bare boat terms or seized by it in prize (except to the extent that the risk of loss or liability is borne by some person other than such Contracting Party).

4. Each Contracting Party waives all its claims against any other Contracting Party for injury or death suffered by any member of its armed services while such member was engaged in the performance of his official duties.

5. Claims (other than contractual claims and those to which paragraphs 6 or 7 of this Article apply) arising out of acts or omissions of members of a force or civilian component done in the performance of official duty, or out of any other act, omission or occurrence for which a force or civilian component is legally responsible, and causing damage in the territory of the receiving State to third parties, other than any of the Contracting Parties, shall be dealt with by the receiving State in accordance with the following provisions:

    a. Claims shall be filed, considered and settled or adjudicated in accordance with the laws and regulations of the receiving State with respect to claims arising from the activities of its own armed forces.

    b. The receiving State may settle any such claims, and payment of the amount agreed upon or determinated by adjudication shall be made by the receiving State in its currency.

    c. Such payment, whether made pursuant to a settlement or to adjudication of the case by a competent tribunal of the receiving State, or the final adjudication by such a tribunal denying payment, shall be binding and conclusive upon the Contracting Parties.

    d. Every claim paid by the receiving State shall be communicated to the sending States concerned together with full particulars and a proposed distribution in conformity with sub-paragraphs e. (i), (ii) and (iii) below. In default of a reply within two months, the proposed distribution shall be regarded as accepted.

    e. The cost incurred in satisfying claims pursuant to the preceding sub-paragraphs and para. 2 of this Article shall be distributed between the Contracting Parties, as follows:

        i. Where one sending State alone is responsible, the amount awarded or adjudged shall be distributed in the proportion of 25 per cent. chargeable to the receiving State and 75 per cent. chargeable to the sending State.

        ii. Where more than one State is responsible for the damage, the amount awarded or adjudged shall be distributed equally among them: however, if the receiving State is not one of the States responsible, its contribution shall be half that of each of the sending States.

        iii. Where the damage was caused by the armed services of the Contracting Parties and it is not possible to attribute it specifically to one or more of those armed services, the amount awarded or adjudged shall be distributed equally among the Contracting Parties concerned: however, if the receiving State is not one of the States by whose armed services the damage was caused, its contribution shall be half that of each of the sending States concerned.

        iv. Every half-year, a statement of the sums paid by the receiving State in the course of the half-yearly period in respect of every case regarding which the proposed distribution on a percentage basis has been accepted, shall be sent to the sending States concerned, together with a request for reimbursement. Such reimbursement shall be made within the shortest possible time, in the currency of the receiving State.

    f. In cases where the application of the provisions of sub-paragraphs b. and e. of this paragraph would cause a Contracting Party serious hardship, it may request the North Atlantic Council to arrange a settlement of a different nature.

    g. A member of a force or civilian component shall not be subject to any proceedings for the enforcement of any judgment given against him in the receiving State in a matter arising from the performance of his official duties.

    h. Except in so far as sub-paragraph e. of this paragraph applies to claims covered by paragraph 2 of this Article, the provisions of this paragraph shall not apply to any claim arising out of or in connexion with the navigation or operation of a ship or the loading, carriage, or discharge of a cargo, other than claims for death or personal injury to which paragraph 4 of this Article does not apply.

6. Claims against members of a force or civilian component arising out of tortious acts or omissions in the receiving State not done in the performance of official duty shall be dealt with in the following manner:

    a. The authorities of the receiving State shall consider the claim and assess compensation to the claimant in a fair and just manner, taking into account all the circumstances of the case, including the conduct of the injured person, and shall prepare a report on the matter.

    b. The report shall be delivered to the authorities of the sending State, who shall then decide without delay whether they will offer an *ex gratia* payment, and if so, of what amount.

    c. If an offer of *ex gratia* payment is made, and accepted by the claimant in full satisfaction of his claim, the authorities of the sending State shall make the payment themselves and inform the authorities of the receiving State of their decision and of the sum paid.

    d. Nothing in this paragraph shall affect the jurisdiction of the courts of the receiving State to entertain an action against a member of a force or of a civilian component unless and until there has been payment in full satisfaction of the claim.

7. Claims arising out of the unauthorized use of any vehicle of the armed services of a sending State shall be dealt with in accordance with paragraph 6 of this Article, except in so far as the force or civilian component is legally responsible.

8. If a dispute arises as to whether a tortious act or omission of a member of a force or civilian component was done in the performance of official duty or as to whether the use of any vehicle of the armed services of a sending State was unauthorized, the question shall be submitted to an arbitrator

      appointed in accordance with paragraph 2 b. of this Article, whose decision on this point shall be final and conclusive.

9. The sending State shall not claim immunity from the jurisdiction of the courts of the receiving State for members of a force or civilian component in respect of the civil jurisdiction of the courts of the receiving State except to the extent provided in paragraph 5 g. of this Article.

10. The authorities of the sending State and of the receiving State shall co-operate in the procurement of evidence for a fair hearing and disposal of claims in regard to which the Contracting Parties are concerned.

**Article IX**

1. Members of a force or of a civilian component and their dependents may purchase locally goods necessary for their own consumption, and such services as they need, under the same conditions as the nationals of the receiving State.

2. Goods which are required from local sources for the subsistence of a force or civilian component shall normally be purchased through the authorities which purchase such goods for the armed services of the receiving State. In order to avoid such purchases having any adverse effect on the economy of the receiving State, the competent authorities of that State shall indicate, when necessary, any articles the purchase of which should be restricted or forbidden.

3. Subject to agreements already in force or which may hereafter be made between the authorised representatives of the sending and receiving States, the authorities of the receiving State shall assume sole responsibility for making suitable arrangements to make available to a force or a civilian component the buildings and grounds which it requires, as well as facilities and services connected therewith. These agreements and arrangements shall be, as far as possible, in accordance with the regulations governing the accommodation and billeting of similar personnel of the receiving State. In the absence of a specific contract to the contrary, the laws of the receiving State shall determine the rights and obligations arising out of the occupation or use of the buildings, grounds, facilities or services.

4. Local civilian labour requirements of a force or civilian component shall be satisfied in the same way as the comparable requirements of the receiving State and with the assistance of the authorities of the receiving State through the employment exchanges. The conditions of employment and work, in particular wages, supplementary payments and conditions for the protection of workers, shall be those laid down by the legislation of the receiving State. Such civilian workers employed by a force or civilian component shall not be regarded for any purpose as being members of that force or civilian component.

5. When a force or a civilian component has at the place where it is stationed

    inadequate medical or dental facilities, its members and their dependents may receive medical and dental care, including hospitalization, under the same conditions as comparable personnel of the receiving State.

6. The receiving State shall give the most favourable consideration to requests for the grant to members of a force or of a civilian component of travelling facilities and concessions with regard to fares. These facilities and concessions will be the subject of special arrangements to be made between the Governments concerned.

7. Subject to any general or particular financial arrangements between the Contracting Parties, payment in local currency for goods, accommodation and services furnished under paragraphs, 2, 3, 4 and, if necessary, 5 and 6, of this Article shall be made promptly by the authorities of the force.

8. Neither a force, nor a civilian component, nor the members thereof, nor their dependents, shall by reason of this Article enjoy any exemption from taxes or duties relating to purchases and services chargeable under the fiscal regulations of the receiving State.

**Article X**

1. Where the legal incidence of any form of taxation in the receiving State depends upon residence or domicile, periods during which a member of a force or civilian component is in the territory of that State by reason solely of his being a member of such force or civilian component shall not be considered as periods of residence therein, or as creating a change of residence or domicile, for the purposes of such taxation. Members of a force or civilian component shall be exempt from taxation in the receiving State on the salary and emoluments paid to them as such members by the sending State or on any tangible movable property the presence of which in the receiving State is due solely to their temporary presence there.

2. Nothing in this Article shall prevent taxation of a member of a force or civilian component with respect to any profitable enterprise, other than his employment as such member, in which he may engage in the receiving State, and, except as regards his salary and emoluments and the tangible movable property referred to in paragraph I, nothing in this Article shall prevent taxation to which, even if regarded as having his residence or domicile outside the territory of the receiving State, such a member is liable under the law of that State.

3. Nothing in this Article shall apply to 'duty' as defined in paragraph 12 of Article XI.

4. For the purposes of this Article the term 'member of a force' shall not include any person who is a national of the receiving State.

**Article XI**

1. Save as provided expressly to the contrary in this Agreement, members of a force and of a civilian component as well as their dependents shall be subject to the laws and regulations administered by the customs authorities of the receiving State. In particular the customs authorities of the receiving State shall have the right, under the general conditions laid down by the laws and regulations of the receiving State, to search members of a force or civilian component and their dependents and to examine their luggage and vehicles, and to seize articles pursuant to such laws and regulations.

2. 
    a. The temporary importation and the re-exportation of service vehicles of a force or civilian component under their own power shall be authorized free of duty on presentation of a triptyque in the form shown in the Appendix to this Agreement.

    b. The temporary importation of such vehicles not under their own power shall be governed by paragraph 4 of this Article and the re-exportation thereof by paragraph 8.

    c. Service vehicles of a force or civilian component shall be exempt from any tax payable in respect of the use of vehicles on the roads.

3. Official documents under official seal shall not be subject to customs inspection. Couriers, whatever their status, carrying these documents must be in possession of an individual movement order, issued in accordance with paragraph 2 b. of Article III. This movement order shall show the number of despatches carried and certify that they contain only official documents.

4. A force may import free of duty the equipment for the force and reasonable quantities of provisions, supplies and other goods for the exclusive use of the force and, in cases where such use is permitted by the receiving State, its civilian component and dependents. This duty-free importation shall be subject to the deposit, at the customs office for the place of entry, together with such customs documents as shall be agreed, of a certificate in a form agreed between the receiving State and the sending State signed by a person authorized by the sending State for that purpose. The designation of the person authorised to sign the certificates as well as specimens of the signatures and stamps to be used, shall be sent to the customs administration of the receiving State.

5. A member of a force or civilian component may, at the time of his first arrival to take up service in the receiving State or at the time of the first arrival of any dependent to join him, import his personal effects and furniture free of duty for the term of such service.

6. Members of a force or civilian component may import temporarily free of duty their private motor vehicles for the personal use of themselves and their dependents. There is no obligation under this Article to grant exemption from taxes payable in respect of the use of roads by private

    vehicles.

7. Imports made by the authorities of a force other than for the exclusive use of that force and its civilian component, and imports, other than those dealt with in paragraphs 5 and 6 of this Article, effected by members of a force or civilian component are not, by reason of this Article, entitled to any exemption from duty or other conditions.

8. Goods which have been imported duty-free under paragraphs 2 b., 4, 5 or 6 above:

    a. may be re-exported freely, provided that, in the case of goods imported under paragraph 4, a certificate, issued in accordance with that paragraph, is presented to the customs office: the customs authorities, however, may verify that goods re-exported are as described in the certificate, if any, and have in fact been imported under the conditions of paragraphs 2 b., 4, 5 or 6 as the case may be;

    b. shall not normally be disposed of in the receiving State by way of either sale or gift: however, in particular cases such disposal may be authorized on conditions imposed by the authorities concerned of the receiving State (for instance, on payment of duty and tax and compliance with the requirements of the controls of trade and exchange).

9. Goods purchased in the receiving State shall be exported therefrom only in accordance with the regulations in force in the receiving State.

10. Special arrangements for crossing frontiers shall be granted by the customs authorities to regularly constituted units or formations, provided that the customs authorities concerned have been duly notified in advance.

11. Special arrangements shall be made by the receiving State so that fuel, oil and lubricants for use in service vehicles, aircraft and vessels of a force or civilian component, may be delivered free of all duties and taxes.

12. In paragraphs 1-10 of this Article:

    'duty' means customs duties and all other duties and taxes payable on importation or exportation, as the case may be, except dues and taxes which are no more than charges for services rendered;

    'importation' includes withdrawal from customs warehouses or continuous customs custody, provided that the goods concerned have not been grown, produced or manufactured in the receiving State.

13. The provisions of this Article shall apply to the goods concerned not only when they are imported into or exported from the receiving State but also when they are in transit through the territory of a Contracting Party, and for this purpose the expression 'receiving State' in this Article shall be regarded

    as including any Contracting Party through whose territory the goods are passing in transit.

### Article XII

1. The customs or fiscal authorities of the receiving State may, as a condition of the grant of any customs or fiscal exemption or concession provided for in this Agreement, require such conditions to be observed as they may deem necessary to prevent abuse.

2. These authorities may refuse any exemption provided for by this Agreement in respect of the importation into the receiving State of articles grown, produced or manufactured in that State which have been exported therefrom without payment of, or upon repayment of, taxes or duties which would have been chargeable but for such exportation. Goods removed from a customs warehouse shall be deemed to be imported if they were regarded as having been exported by reason of being deposited in the warehouse.

### Article XIII

1. In order to prevent offences against customs and fiscal laws regulations, the authorities of the receiving and of the sending States shall assist each other in the conduct of enquiries and the collection of evidence.

2. The authorities of a force shall render all assistance within their power to ensure that articles liable to seizure by, or on behalf of, the customs or fiscal authorities of the receiving State are handed to those authorities.

3. The authorities of a force shall render all assistance within their power to ensure the payment of duties, taxes and penalties payable by members of the force or civilian component or their dependents.

4. Service vehicles and articles belonging to a force or to its civilian component, and not to a member of such force or civilian component, seized by the authorities of the receiving State in connection with an offence against its customs or fiscal laws or regulations shall be handed over to the appropriate authorities of the force concerned.

### Article XIV

a. A force, a civilian component and the members thereof, as well as their dependents, shall remain subject to the foreign exchange regulations of the sending State and shall also be subject to the regulations of the receiving State.

b. The foreign exchange authorities of the sending and the receiving States may issue special regulations applicable to a force or civilian component or the members thereof as well as to their dependents.

### Article XV

1. Subject to paragraph 2 of this Article, this Agreement shall remain in force in the event of hostilities to which the North Atlantic Treaty applies, except that the provisions for settling claims in paragraphs 2 and 5 of Article VIII shall not apply to war damage, and that the provisions of the Agreement, and, in particular of Articles III and VII, shall immediately be reviewed by the Contracting Parties concerned, who may agree to such modifications as they may consider desirable regarding the application of the Agreement between them.

2. In the event of such hostilities, each of the Contracting Parties shall have the right, by giving 60 days' notice to the other Contracting Parties, to suspend the application of any of the provisions of this Agreement so far as it is concerned. If this right is exercised, the Contracting Parties shall immediately consult with a view to agreeing on suitable provisions to replace the provisions suspended.

**Article XVI**

All differences between the Contracting Parties relating to the interpretation or application of this Agreement shall be settled by negotiation between them without recourse to any outside jurisdiction. Except where express provision is made to the contrary in this Agreement, differences which cannot be settled by direct negotiation shall be referred to the North Atlantic Council.

**Article XVII**

Any Contracting Party may at any time request the revision of any Article of this Agreement. The request shall be addressed to the North Atlantic Council.

**Article XVIII**

1. The present Agreement shall be ratified and the instruments of ratification shall be deposited as soon as possible with the Government of the United States of America, which shall notify each signatory State of the date of deposit thereof.

2. Thirty days after four signatory States have deposited their instruments of ratification the present Agreement shall come into force between them. It shall come into force for each other signatory State thirty days after the deposit of its instrument of ratification.

3. After it has come into force, the present Agreement shall, subject to the approval of the North Atlantic Council and to such conditions as it may decide, be open to accession on behalf of any State which accedes to the North Atlantic Treaty. Accession shall be effected by the deposit of an instrument of accession with the Government of the United States of America, which shall notify each signatory and acceding State of the date of deposit thereof. In respect of any State on behalf of which an instrument

of accession is deposited, the present Agreement shall come into force thirty days after the date of the deposit of such instrument.

### Article XIX

1. The present Agreement may be denounced by any Contracting Party after the expiration of a period of four years from the date on which the Agreement comes into force.

2. The denunciation of the Agreement by any Contracting Party shall be effected by a written notification addressed by that Contracting Party to the Government of the United States of America which shall notify all the other Contracting Parties of each such notification and the date of receipt thereof.

3. The denunciation shall take effect one year after the receipt of the notification by the Government of the United States of America. After the expiration of this period of one year, the Agreement shall cease to be in force as regards the Contracting Party which denounces it, but shall continue in force for the remaining Contracting Parties.

### Article XX

1. Subject to the provisions of paragraphs 2 and 3 of this Article, the present Agreement shall apply only to the metropolitan territory of a Contracting Party.

2. Any State may, however, at the time of the deposit of its instrument of ratification or accession or at any time thereafter, declare by notification given to the Government of the United States of America that the present Agreement shall extend (subject, if the State making the declaration considers it to be necessary, to the conclusion of a special agreement between that State and each of the sending States concerned), to all or any of the territories for whose international relations it is responsible in the North Atlantic Treaty area. The present Agreement shall then extend to the territory or territories named therein thirty days after the receipt by the Government of the United States of America of the notification, or thirty days after the conclusion of the special agreements if required, or when it has come into force under Article XVIII, whichever is the later.

3. A State which has made a declaration under paragraph 2 of this Article extending the present Agreement to any territory for whose international relations it is responsible may denounce the Agreement separately in respect of that territory in accordance with the provisions of Article XIX.

In witness whereof the undersigned Plenipotentiaries have signed the present Agreement. Done in London this nineteenth day of June, 1951, in the English and French languages, both texts being equally authoritative, in a single original which shall be deposited in the archives of the Government of the United States of America. The Government of the United States of America shall transmit

certified copies thereof to all the signatory and acceding States.

