**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **MARVIN GREEN,** | ) |
| **o/b/o the minor child SG,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | ) **Civil Action No. 06-1434 (RBW)** |
| | ) |
| **JOSEPH STUYVESANT,** | ) |
| **Captain, U.S. Navy, et al.,** | ) |
| | ) |
| **Defendants.** | ) |

**DEFENDANTS' MOTION TO DISMISS OR, IN THE ALTERNATIVE,
<u>MOTION FOR SUMMARY JUDGMENT</u>**

Defendants, Joseph Stuyvesant, Captain, U.S. Navy, and SJA Kerry Abramson, by

undersigned counsel, respectfully move the Court, pursuant to Rules 12(b)(1) and 12(b)(6) of the

Federal Rules of Civil Procedure, for an order dismissing plaintiff's action for lack of

jurisdiction over the subject matter and for failure to state a claim upon which relief can be

granted.  In the alternative, Defendants move the Court, pursuant to Rule 56 of the Federal Rules

of Civil Procedure, for an order granting Defendant summary judgment on the grounds that no

genuine issue of material fact exists and Defendant is entitled to judgment as a matter of law.

In support of this Motion, Defendant respectfully submits the attached Memorandum of

Points and Authorities with Exhibits attached thereto, a Statement of Material Facts Not in

Genuine Dispute, and a proposed Order.[1]

---

[1]  Plaintiff will take notice that any factual assertions contained in the documents
in support of Defendant's Motion may be accepted by the Court as true unless plaintiff
controverts them with his own affidavit or other documentary evidence.  See <u>Neal v.
Kelly</u>, 963 F.2d 453 (D.C. Cir. 1992), and LCvR 7, 56.1.

As stated in Fed. R. Civ. P. 56(e):

Respectfully submitted,


 /s/
JEFFREY A. TAYLOR, D.C. BAR No. 498610
United States Attorney


 /s/
RUDOLPH CONTRERAS, D.C. BAR No. 434122
Assistant United States Attorney


 /s/
MARIAN L. BORUM, D.C. BAR No. 435409
Assistant United States Attorney

---

When a motion for summary judgment is made and
supported as provided in this rule, an adverse party may not
rest upon the mere allegations or denials of the adverse
party's pleading, but the adverse party's response, by
affidavits or as otherwise provided in this rule, must set
forth specific facts showing that there is a genuine issue for
trial.  If the adverse party does not so respond, summary
judgment, if appropriate, may be entered against the
adverse party.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

MARVIN GREEN,                              )
o/b/o the minor child SG,                 )
                                          )
         Plaintiff,                       )
                                          )
     v.                                   )  Civil Action No. 06-1434 (RBW)
                                          )
JOSEPH STUYVESANT,                        )
Captain, U.S. Navy, et al.,               )
                                          )
         Defendants.                      )

## STATEMENT OF UNDISPUTED MATERIAL FACTS

1.  The Commanding Officer of a military installation is responsible for the "safety, well-being and efficiency of the entire command."  32 C.F.R. § 700.802(a).

2. The parties to the North Atlantic Treaty, commonly referred to as NATO, have entered a Status of Forces Agreement ("SOFA") addressing "the status of . . . forces while in the territory of another Party."  NATO SOFA, Preamble, attached as Exhibit 1.[2]  That Agreement defines a "dependent" as "the spouse of a member of a force or a civilian component, or a child of such member depending on him or her for support."  Id.

3.  Under regulations promulgated in accordance with the NATO SOFA, the Commanding Officer of Naval Air Station ("NAS"), Sigonella, Italy, may extend certain "privileges" to "command-sponsored family members."  See Exhibit 2.  Specifically, under NAS Sigonella Instruction 1754.2N of January 11, 2006, the Commanding Officer may allow a "family member whose sponsor is granted authorization . . . to reside in the vicinity of [the base]" to utilize "non-emergency medical . . . facilities."  Id., ¶¶ 4(a)-(c) and 6(j).  A "sponsor"

---

[2] Available at http://www.nato.int/docu/basictxt/; last visited, December 12, 2006.

includes a "[Department of Defense] civilian employee assigned to Sigonella, Italy under [Permanent Change of Station] orders."  Id.

4.  Under NAS Sigonella Instruction 1754.2N of January 11, 2006, "[c]ommand sponsorship will automatically terminate when the sponsor detaches on [Permanent Change of Station] orders . . . ."  Exhibit 2, ¶ 9.

5.  Green was assigned "Civilian Permanent Duty" in Sigonella, Italy, in April 1997. Exhibit 4, Block 5 (listing "reporting date" as on or about April 28, 1997) and Block 13 (listing ultimate destination of Sigonella, Italy).  He was accompanied by his spouse, Sophia Torok, and his son, SG.  Id.  After 5 years in Sigonella, Green was reassigned to Naples, Italy, on June 21, 2005.  Exhibit 5, Blocks 18a and 18b.  His dependents, Ms. Torok and SG, were authorized to accompany Green on this transfer.  Id. at Block 19.

6.  On June 27, 2006, the Commanding Officer of Naval Air Station, Sigonella, Italy, Captain Joseph Stuyvesant, noted that "[Ms. Torok's] sponsor, Marvin Green . . . has officially transferred from Sigonella . . . ."  Exhibit 3.  Stuyvesant further observed that Ms. Torok and Green's son, SG, "failed to accompany [their] sponsor to his new duty station in Naples, Italy." Id.  Additionally, Stuyvesant noted that under "Italian Immigration laws, the North Atlantic Treaty organization Status of Forces Agreement (NATO SOFA) and local instructions, command sponsorship for all approved family members terminates upon the transfer of the sponsor."  Id.  Accordingly, Stuyvesant barred Ms. Torok and SG from entering NAS Sigonella. Id.

7.  Ms. Torok requested reconsideration on June 29, 2006.  Exhibit 6.  In support of her request, Ms. Torok cited the pendency of Civil Action No. 06-1009 before this Court, and a notification to Congressman Waxman regarding an alleged failure to follow due process.  Id.

2

8. Stuyvesant responded to Ms. Torok on July 5, 2006, and explained that his decision was based on several factors, including Ms. Torok's suspected drunk driving on the installation, her failure to cooperate with security personnel, her suspected violation of his order not to drive on the installation, and her failure to produce evidence that she had permission from the government of Italy to live and work in Sicily. Exhibit 7. Stuyvesant stated that neither the pending civil action nor Ms. Torok's correspondence with a congressmen were "relevant [to his] decision to bar [her] from the installation." Id. Accordingly, Stuyvesant denied Ms. Torok's request for reconsideration. Id.

> /s/
> _____
> JEFFREY A. TAYLOR, D.C. Bar No. 498610
> United States Attorney
>
>
> /s/
> _____
> RUDOLPH CONTRERAS, D.C. Bar No. 434122
> Assistant United States Attorney
>
>
> /s/
> _____
> MARIAN L. BORUM, D.C. BAR No. 435409
> Assistant United States Attorney

OF COUNSEL:
Thomas F. Leary, LCDR, JAGC, USN
General Litigation Division
Office of the Judge Advocate General
1322 Patterson Avenue, S.E., Suite 3000
Washington, D.C. 20374-5066

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **MARVIN GREEN,** | ) |
| **o/b/o the minor child SG,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | ) **Civil Action No. 06-1434 (RBW)** |
| | ) |
| **JOSEPH STUYVESANT,** | ) |
| **Captain, U.S. Navy, et al.,** | ) |
| | ) |
| **Defendants.** | ) |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**
**OF DEFENDANTS' MOTION TO DISMISS OR, IN THE ALTERNATIVE,**
**FOR SUMMARY JUDGMENT**

Pursuant to Fed. R. Civ. P. 12(b)(1), Fed. R. Civ. P. 12(b)(6), Fed. R. Civ. P. 56, and

LCvR 7(a), Defendants, by their undersigned attorneys, hereby submit this memorandum of

points and authorities in support of their motion to dismiss this action for lack of jurisdiction

over the subject matter and for failure to state a claim upon which relief can be granted or, in the

alternative, for summary judgment.

**STATEMENT OF FACTS**

I.     **The Legal Status of American Personnel in Sigonella, Italy**

The parties to the North Atlantic Treaty, commonly referred to as NATO, have entered a

Status of Forces Agreement ("SOFA") addressing "the status of . . . forces while in the territory

of another Party."  NATO SOFA, Preamble, attached as Exhibit 1.[3]  That Agreement defines a

"dependent" as "the spouse of a member of a force or a civilian component, or a child of such

member depending on him or her for support."  Id.

---

[3] Available at http://www.nato.int/docu/basictxt/; last visited, December 12, 2006.

Under regulations promulgated in accordance with the NATO SOFA, the Commanding Officer of Naval Air Station ("NAS"), Sigonella, Italy, may extend certain "privileges" to "command-sponsored family members."  See Exhibit 2.  Specifically, under NAS Sigonella Instruction 1754.2N of January 11, 2006, the Commanding Officer may allow a "family member whose sponsor is granted authorization . . . to reside in the vicinity of [the base]" to utilize "non-emergency medical . . . facilities."  Id., ¶¶ 4(a)-(c) and 6(j).  A "sponsor" includes a "[Department of Defense] civilian employee assigned to Sigonella, Italy under [Permanent Change of Station] orders."  Id.

## II.    The Instant Cause of Action

This is the third case Green has filed in this Court, all of which relate to his assignment in Sigonella, Italy, from April 1997 until July 2005 as an employee of the Department of Defense Dependents Schools - Europe ("DOD DSE").[4]  In this action, Green challenges the validity of a Barment Order issued by the Commanding Officer of NAS Sigonella, Captain Joseph Stuyvesant.  That Order, dated June 27, 2006, prohibited Green's spouse, Sophia Torok, and his minor son, SG, from accessing NAS Sigonella.  Exhibit 3.

Green was assigned "Civilian Permanent Duty" in Sigonella, Italy, in April 1997. Exhibit 4, Block 5 (listing "reporting date" as on or about April 28, 1997) and Block 13 (listing ultimate destination of Sigonella, Italy).  He was accompanied by his spouse, Sophia Torok, and his son, SG.  Id.  After five (5) years in Sigonella, Green was reassigned to Naples, Italy, on June 21, 2005.  Exhibit 5, Blocks 18a and 18b.  His dependents, Ms. Torok and SG, were again authorized to accompany Green on this transfer.  Id. at Block 19.

_____

[4] The other two actions are Civil Action No. 06-1008, where Green alleges harm by DOD DSE in its execution of a mobility agreement that resulted in Green's transfer from Sigonella to Naples, and Civil Action No. 06-1009, where he requests employment reinstatement for his wife, Sophia Torok.

On June 27, 2006, more than one year after Green had been transferred from Sigonella to Naples, the Commanding Officer of Naval Air Station, Sigonella, Italy, noted that "[Ms. Torok's] sponsor, Marvin Green . . . has officially transferred from Sigonella . . . ." Exhibit 3. Stuyvesant further observed that Ms. Torok and Green's son, SG, "failed to accompany [their] sponsor to his new duty station in Naples, Italy." Id. He noted that under "Italian Immigration laws, the North Atlantic Treaty organization Status of Forces Agreement (NATO SOFA) and local instructions, command sponsorship for all approved family members terminates upon the transfer of the sponsor." Id. Accordingly, Stuyvesant barred Ms. Torok and SG from entering NAS Sigonella. Id.

Ms. Torok requested reconsideration on June 29, 2006. Exhibit 6. In support of her request, Ms. Torok cited the pendency of Civil Action No. 06-1009 before this Court, and a notification to Congressman Waxman regarding an alleged failure to follow due process. Id. Stuyvesant responded on July 5, 2006, and explained that his decision was based on several factors, including Ms. Torok's suspected drunk driving on the installation, her failure to cooperate with security personnel, her suspected violation of his order not to drive on the installation, and her failure to produce evidence that she had permission from the government of Italy to live and work in Sicily. Exhibit 7. Stuyvesant stated that neither the pending civil action nor Ms. Torok's correspondence with a congressmen were "relevant [to his] decision to bar [her] from the installation." Id. Accordingly, Stuyvesant denied Ms. Torok's request for reconsideration. Id.

Green, on behalf of his minor child SG, now challenges the Barment Order.

## SUMMARY OF ARGUMENT

Neither the nature of Green's challenge to the Barment Order, nor the basis on which Green invokes this Court's jurisdiction, is entirely clear from the face of Green's complaint. Nevertheless, even liberally construing Green's complaint,[5] the matter should be dismissed on any theory he might be advancing.

The Defendants are entitled to dismissal of the Complaint under Fed. R. Civ. P. 12(b)(1) and Fed. R. Civ. P. 12(b)(6). Green's facial challenge to the validity of the Barment Order fails to state a claim upon which relief can be granted, because the Commanding Officer had the responsibility and broad discretion to exclude civilians – including SG – from NAS Sigonella. Moreover, the Commanding Officer's actions advanced an important government interest – discipline and good order – that far outweighs any interest SG has in accessing NAS Sigonella.

Furthermore, Green has failed to state a claim upon which relief can be granted under a Bivens theory, because he has not alleged, nor can he point to, a clearly established constitutional right that the Commanding Officer violated by issuing the Barment Order.

Additionally, this Court lacks jurisdiction over the subject matter of an action under the Federal Tort Claims Act, because Green has not asserted, nor can he allege, that he has exhausted his administrative remedies under that Act. More specifically, Green has not filed a claim for relief with the agency, as required by the Act.

Likewise, this Court lacks jurisdiction over the subject matter of Green's prayer for relief with respect to state and federal law claims of "reckless disregard" and "child endangerment" because courts have long refrained from providing litigants with "advisory opinions" of the type

---

[5] A pro se plaintiff's pleadings are held to a less stringent standard; however, for a plaintiff to prevail, it must still appear that he can prove some set of facts that would entitle him to relief. See Estelle v. Gamble, 429 U.S. 97, 106 (1976).

Green seeks, and because Green lacks standing to advance these criminal charges before this Court.

In the alternative, Defendants are entitled to summary judgment under Fed. R. Civ. P. 56, because there are no material facts in dispute, and notwithstanding Green's protestations, the Barment Order was eminently reasonable under the circumstances, and was not patently arbitrary or discriminatory.

## ARGUMENT

## I.   LEGAL STANDARDS

### A.   Standard Applicable to a Motion To Dismiss Under Federal Rule of Civil Procedure 12(b)(1)

Federal Rule of Civil Procedure 12(b)(1) permits a defendant to move to dismiss a plaintiff's complaint where the court "lack[s] jurisdiction over the subject matter."  The plaintiff bears the burden of establishing that this Court has subject matter jurisdiction. See Lujan v. Defenders of Wildlife, 504 U.S. 555 (1992).  When considering a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), the allegations of the complaint must be construed in favor of the pleader.  See Hohri v. United States, 782 F.2d 227, 241 (D.C. Cir. 1986), vacated on other grounds, 482 U.S. 64 (1987).  The Court need not accept factual inferences drawn by the plaintiff if those inferences are not supported by facts alleged in the complaint, nor must the Court accept the plaintiff's legal conclusions.  See Nat'l Treasury Employees Union v. United States, 101 F.3d 1423, 1430 (D.C. Cir. 1996); Kowal v. MCI Communications Corp., 16 F.3d 1271, 1276 (D.C. Cir. 1994).  When evaluating a motion to dismiss for lack of subject matter jurisdiction, the Court may consider matters beyond the pleadings.  See Herbert v. Nat'l Academy of Sciences, 974 F.2d 192, 197 (D.C. Cir. 1992);

Scolaro v. D.C. Bd. of Elections and Ethics, 104 F. Supp. 2d 18, 22 (D.D.C. 2000), aff'd No. 00-7176, 2001 WL 135857 (D.C. Cir. Jan. 18, 2001).

**B.    Standard Applicable to a Motion to Dismiss Under Federal Rule of Civil Procedure 12(b)(6)**

Under Federal Rule of Civil Procedure 12(b)(6), a motion to dismiss should be granted only if the "Plaintiffs can prove no set of facts in support of their claim which would entitle them to relief." Kowal, 16 F.3d at 1276 (citing Schuler v. United States, 617 F.2d 605, 608 (D.C. Cir. 1979)). A court must accept the allegations of the complaint as true in determining whether to grant a motion to dismiss under Rule 12(b)(6). Scolaro, 104 F. Supp. at 22; Croixland Properties Ltd. Partnership v. Corcoran, 174 F.3d 213, 215 (D.C. Cir. 1999). While the plaintiff is entitled to all favorable inferences that can be drawn from his factual allegations, Warth v. Seldin, 422 U.S. 490, 501 (1975), the Court need not accept inferences drawn by the plaintiff if such inferences are unsupported by the facts set out in the complaint. Kowal, 16 F.3d at 1276. Further, while the Court must accept the plaintiff's allegations of fact as true, the Court is not required to accept as correct the conclusions the plaintiff would draw from such facts. Taylor v. Federal Deposit Ins. Corp., 132 F.3d 753, 762 (D.C. Cir. 1997); Nat'l Treasury Employees Union, 101 F.3d at 1430. Nor must a court "accept legal conclusions cast in the form of factual allegations." Kowal, 16 F.3d at 1276; see also Papasan v. Allain, 478 U.S. 265, 286 (1986). If "matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56 . . . ." Fed. R. Civ. P. 12(b)(6).

C.    **Standard Applicable to a Motion for Summary Judgment Under Federal
Rule of Civil Procedure 56.**.

Rule 56 of the Federal Rules of Civil Procedure allows summary judgment whenever

"the pleadings, depositions, answers to interrogatories, and admissions on file, together with the

affidavits, if any, show that there is no genuine issue as to any material fact, and that the moving

party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "[T]he burden on the

moving party may be discharged by 'showing' – that is, pointing out to the district court – that

there is an absence of evidence to support the moving party's case." Celotex Corp. v. Catrett,

477 U.S. 317, 325 (1986).

Whether a party is entitled to summary judgment is determined based upon the party's

burden of proof at trial, as required by the substantive law governing the case. Anderson v.

Liberty Lobby, Inc., 477 U.S. 242, 254 (1986) ("[T]he judge must view the evidence presented

through the prism of the substantive evidentiary burden."). Summary judgment should be

entered against "a party who fails to make a showing sufficient to establish the existence of an

element essential to that party's case and in which that party will bear the burden of proof at

trial." Celotex, 477 U.S. at 322-23.

Whether facts are material is a question governed by the applicable substantive law.

Anderson, 477 U.S. at 248. "Factual disputes that are irrelevant or unnecessary will not be

counted." Id. A plaintiff may not rely on his own unsupported statements, even if under oath, to

establish a genuine issue of material fact. See Campbell v. District of Columbia, 874 F. Supp.

403, 406-07 (D.D.C. 1994). "The mere existence of a scintilla of evidence in support of the

plaintiff's position will be insufficient; there must be evidence on which the [factfinder] could

reasonably find for the plaintiff." Anderson, 477 U.S. at 252. If the nonmoving party responds

7

only with evidence that "'is merely colorable, or is not significantly probative, summary judgment may be granted.'" Id. at 249-50.

## II.    GREEN'S CHALLENGE TO THE BARMENT ORDER'S VALIDITY FAILS TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED.

Green alleges that the Barment Order "is legally defective in its failure to separately recognize SG's continuing status as a DoD Civilian's dependent . . . ." Complaint, Part IV. This challenge – which forms the gravamen of Green's entire complaint – fails to state a claim upon which relief can be granted, and should be dismissed under Fed. R. Civ. P. 12(b)(6).

### A.    The Scope of the Commanding Officer's Authority

The Supreme Court has recognized the unparalleled responsibilities of the military commander: "The responsibility of the commanding officer for his [or her] command is absolute. . . ." Cafeteria & Restaurant Workers Union, Local 473 v. McElroy, 367 U.S. 886, 891 (1961) (citing Navy Regulations codified at 32 C.F.R. § 700.802(a)). Such absolute responsibility and its concomitant authority clearly distinguish the military from civilian society in Supreme Court jurisprudence:

> This Court has long recognized that the military is, by necessity, a specialized society separate from civilian society. We have also recognized that the military has, again by necessity, developed laws and traditions of its own during its long history. The differences between the military and civilian communities result from the fact that "it is the primary business of armies and navies to fight or be ready to fight wars should the occasion arise."

Parker v. Levy, 417 U.S. 733, 743 (1974) (quoting United States ex rel. Toth v. Quarles, 350 U.S. 11, 17 (1955)).

The Commanding Officer is responsible for the "safety, well-being and efficiency of the entire command." 32 C.F.R. § 700.802(a); see also Cafeteria & Restaurant Workers, 367 U.S. at

891.  Consistent with this unparalleled responsibility, a military commander's authority over

military personnel and property under his or her command is also plenary and without analog in

the civilian world.  See, e.g., Greer v. Spock, 424 U.S. 828 (1976) (upholding regulations

implementing commander's authority to bar civilians from distributing literature on base); Tokar

v. Hearne, 699 F.2d 753 (5th Cir. 1983) (acknowledging that a commander's authority to exclude

civilians from military bases is given great deference by the courts); United States v. Jenkins,

986 F.2d 76 (4th Cir. 1993) (approving a commander's authority to order random searches of all

persons entering or exiting a military reservation – including civilians).

A military commanding officer must exercise his or her authority to exclude personnel

from accessing an installation "by means consonant with due process of law."  Cafeteria &

Restaurant Workers, 367 U.S. at 894-95 (citing Homer v. Richmond, 292 F.2d 719, 722 (D.C.

Cir. 1961)).  The procedures required under due process are not, however, fixed or rigid.  See

Cafeteria & Restaurant Workers, 367 U.S. at 895; see also Tokar, 699 F.2d at 756 (court

balanced individual's interest in accessing the base against commander's authority to maintain

discipline and order; government interest "greatly outweigh[ed]" the individual's).  To the

contrary, "[w]here it has been possible to characterize [the] private interest . . . as a mere

privilege subject to the Executive's plenary power, it has traditionally been held that notice and

hearing are not constitutionally required."  Cafeteria & Restaurant Workers, 367 U.S. at 895

(citations omitted).

### B.    Stuyvesant's Barment Order

In the matter sub judice, Stuyvesant's Barment Order advances a critical government

interest that significantly outweighs SG's interest in accessing NAS Sigonella.  Indeed, by

precluding a dependent whose sponsor had long since left the Sigonella area, the Barment Order at issue here ensured, to the extent practicable, that Stuyvesant was not party to a violation of either the NATO SOFA or his own operative instruction.  See Exhibits 1-3 and 5.  Such an exercise of authority is fully consistent with a commanding officer's well-established authority to maintain good order and discipline at an installation under his or her control.  See Tokar, 699 F.2d at 756; see also 32 C.F.R. § 700.802(a) (Commanding Officer is responsible for the "safety, well-being and efficiency of the entire command").  SG's stated interests in maintaining a "psychological bond" with his primary physician, and in continuing school at the DOD school in Sigonella, are outweighed by the government's interest in this matter.  See Tokar, 699 F.2d at 756 (noting plaintiff's argument that the barment order also precludes her sons from accessing the base, but nevertheless holding that the government's interests outweighed hers and her sons').

Furthermore, Stuyvesant afforded Green and his wife, Ms. Torok, more process than was required under Cafeteria & Restaurant Workers, 367 U.S. at 894-896.  As previously noted, a person precluded from accessing a military installation is not constitutionally entitled to notice or a hearing.  Id. at 895.  Yet in the matter at bar, Stuyvesant afforded Ms. Torok an opportunity to respond to the Barment Order, Exhibit 3, of which she subsequently availed herself, Exhibit 6.  Thus, Stuyvesant actually exceeded what the law required of him in rendering his decision.

The gravamen of Green's challenge to the Barment Order's validity is that its effect on SG was not accorded appropriate weight.  See Complaint, Part III ("The barment order is defective in that it has co-mingled SG's fate and rights with that of his mother. . . ."); see also Complaint, Part IV.  But this challenge is of no moment, because Stuyvesant's interests – and

10

accordingly, the government's interests – far outweigh any interest Green or SG can articulate in

this matter.  As such, Green fails to state a claim upon which relief can be granted, and his

complaint should be dismissed under Fed. R. Civ. P. 12(b)(6).

**III.    TO THE EXTENT GREEN ADVANCES A <u>BIVENS</u> CAUSE OF ACTION, HIS COMPLAINT SHOULD BE DISMISSED.**

In <u>Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics</u>, 403 U.S. 388

(1971), the Supreme Court recognized an implied private cause of action for damages against

federal officers in their personal capacities, where they are alleged to have violated constitutional

rights under color of federal authority.  Officials sued under <u>Bivens</u>, however, enjoy qualified

immunity unless their conduct violates "clearly established statutory or constitutional rights of

which a reasonable person would have known.  <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 818 (1982).

Green's complaint - - to the extent it is construed as a <u>Bivens</u> cause of action - - should be

dismissed for three reasons.[6]

---

[6] An additional reason for dismissal lies in Green's failure to properly invoke venue under 28 U.S.C. § 1391(b).  A civil action wherein jurisdiction is not founded solely on diversity of citizenship may, except as otherwise provided by law, be brought only in (1) a judicial district where any defendant resides, if all defendants reside in the same state, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of the property that is the subject of the action is situated, or (3) a judicial district in which any defendant may be found, if there is no district in which the action may otherwise be brought.  28 U.S.C. § 1391(b). Because the alleged events or omissions giving rise to Green's claims occurred entirely outside the District of Columbia, by military personnel stationed and residing outside the District of Columbia, venue cannot lie in this district under Section 1391(b).  <u>See</u> <u>Robertson v. Merola</u>  895 F. Supp. 1 (D.D.C. 1995); <u>Cameron v. Thornburgh</u>, 983 F.2d 253, 257 (D.C. Cir. 1993) (venue improper in the District of Columbia where complaint "did not allege a single rule or policy emanating from Washington").  When neither of the individual defendants resides in the District of Columbia, there is no basis for venue in a <u>Bivens</u> action in this District.

## A.      Service of Process Was Improper Under Fed. R. Civ. P. 4(e)

It is well-established that plaintiff must bear the burden of establishing the Court's personal jurisdiction over the defendant.  See McNutt v. General Motors Acceptance Corporation, 298 U.S. 178, 182 (1936); Tavoulareas v. Comnas, 720 F.2d 192, 195 (D.C. Cir. 1983).  It is equally well-established that, in an action against a federal employee in his or her individual capacity, the individually-sued defendant must be served with process in accordance with Rule 4(e) of the Federal Rules of Civil Procedure.  Rule 4(e) requires that a copy of a summons and complaint be delivered to the defendant (or his appointed agent) personally, or be left "at his dwelling house or usual place of abode with some person of suitable age and discretion" who resides there.  Service on the U.S. Attorney in the district where the action was brought pursuant to Fed. R. Civ. P. 4(i) "does not obviate the requirement of personal service under Fed. R. Civ. P. 4(d)(1) where the action is in substance against a federal official in his individual capacity."  See Lawrence v. Acree, 79 F.R.D. 669, 670 (D.D.C. 1978).

Here, defendants were not personally served as required by Fed. R. Civ. P. 4(e).  Rather, Stuyvesant was served, by certified mail, at his place of employment.  See Pacer Docket Sheet Entry No. 4.[7]  He did not sign the certified mail receipt.  Actual notice will not, of course, substitute for technically proper service under Rule 4 and will not permit the Court to render a personal judgment against an individually-named defendant.  Sieg v. Karnes, 693 F.2d 803 (8th Cir. 1982); see also Stafford v. Briggs, 444 U.S. 527 (1980).  The service of process thus being

---

[7] Green's complaint names "SJA Kerry Abramson" as a co-defendant.  See Complaint.  But assuming arguendo that Abramson is a co-defendant in this action, Green has not accomplished proper service of process on Abramson, see Pacer Docket Sheet, and the complaint against Abramson should be dismissed.

12

defective as to the defendants in their individual capacities, this action cannot proceed against them personally.  Micklaus v. Carlson, 632 F.2d 227, 240 (3rd Cir. 1980); Griffith v. Nixon, 518 F.2d 1195, 1196 (2d Cir. 1985), cert. denied, 423 U.S. 995 (1975).  The defendants' limited appearance in the form of this motion to dismiss does not constitute an acquiescence to the manner of service or a waiver of proper service.

### B.    This Court Lacks Personal Jurisdiction Over the Named Defendants

Green bears the burden of establishing that personal jurisdiction may be exercised over Stuyvesant and Abramson, the defendants named in his Complaint.  See Naarlex Consulting Corp v. Watt, 722 F.2d 779, 785 (D.C. Cir. 1983).  "If [a plaintiff's] allegations of jurisdictional facts are challenged by his adversary in any appropriate manner, he must support them by competent proof."  McNutt, 298 U.S. at 189.  Green cannot meet the burden to establish such necessary facts.

Here, the District of Columbia long-arm statute is the only basis upon which personal jurisdiction may be obtained over defendants - - like Stuyvesant and Abramson - - who do not reside within or maintain a principle place of business in the District of Columbia.  Meyer v. Reno, 911 F. Supp. 11, 14 (D.D.C. 1996).  The statute authorizes a District of Columbia Court to exercise personal jurisdiction over a person as to a claim for relief arising from the person's:

> (1) transacting business in the District of Columbia;
> (2) contracting to supply services in the District of Columbia;
> (3) causing tortious injury in the District of Columbia by an act or omission in the District of Columbia;
> (4) causing tortious injury in the District of Columbia by an act or omission outside the District of Columbia if he regularly does or solicits business, engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed, or services rendered, in the District of Columbia;
> (5) having interest in, using, or possessing real property in the District of Columbia;

13

(6) contracting to insure or act as surety for or on any person, property, or risk, contract, obligation, or agreement located, executed, or to be performed within the District of Columbia at the time of contracting, unless the parties otherwise provide in writing; or (7) marital or parent and child relationship in the District of Columbia . . . .

D.C. Code Ann. § 13-423(a).

Green has failed to make even a prima facie showing that this Court can exercise personal jurisdiction over either Stuyvesant or Abramson. He has not alleged - - nor could he - - that either Stuyvesant or Abramson work or reside in the District of Columbia. See Complaint. Thus, these defendants do not fall within the scope of the District of Columbia's long-arm statute. See D.C. Code Ann. § 13-423. The defendants' limited appearance in the form of this motion to dismiss does not constitute an acquiescence to this Court's personal jurisdiction.

### C.    Green Fails to State a Claim Under Bivens.

In evaluating a qualified immunity defense, a court must undertake two distinct inquiries. Saucier v. Katz, 533 U.S. 194, 201 (2001). The court must first decide whether the facts as alleged state a violation of a constitutional right. If they do, the court next must decide whether that right was clearly established "under settled law," Hunter v. Bryant, 502 U.S. 224, 228 (1991) (per curiam), such that "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted, Saucier. 533 U.S. at 202. But "[i]f no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity." Id. at 201.

In the matter at hand, Green alleges that the Barment Order deprives SG of "access" to his preferred physician, and that the psychological impact "bear[s] directly on his rate of recovery from surgery . . . and that further impediment . . . may negatively affect his lifetime earnings [sic] potential." Complaint, Part IV. None of these alleged consequences of the

14

Barment Order rise to the level of a right, let alone a <u>constitutional</u> right.  To the contrary, as previously discussed, a military commander has the responsibility and broad discretion to exclude civilians from a military installation.  <u>See</u> Discussion, Part II; <u>see also</u> <u>Cafeteria & Restaurant Workers</u>, 367 U.S. at 891 ("The responsibility of the commanding officer for his [or her] command is absolute. . . ." ).  Moreover, Green cannot successfully allege a violation of constitutional Due Process, for reasons also previously discussed.  <u>See</u> Discussion, Part II.

SG was extended certain "privileges" by virtue of his status as a "command-sponsored family member" in Sigonella.  <u>See</u> Exhibit 2, ¶¶ 4(a)-(c) and 6(j) ("privileges" include access to "non-emergency medical . . . facilities"); <u>see also</u> Exhibit 4 (Permanent Change of Station orders conferring status of "sponsor" on Green).  But SG's entitlement to those privileges - - to the extent he was "entitled" to them at all - - terminated upon the transfer of his sponsor, Green, from Sigonella to Naples in June 2005.  <u>See</u> Exhibit 5.  Because Green can demonstrate no constitutional right for SG to access NAS Sigonella, his <u>Bivens</u> action fails to state a claim upon which relief can be granted and should be dismissed.[8]

## IV.    TO THE EXTENT GREEN ADVANCES A CAUSE OF ACTION UNDER THE FEDERAL TORT CLAIMS ACT, THIS COURT LACKS JURISDICTION AND HIS COMPLAINT SHOULD BE DISMISSED.

Although Green does not expressly demand money damages in his Complaint, he posits a negative impact on SG's "lifetime earnings potential" as a consequence of the Barment Order.

---

[8] Green's complaint names "SJA Kerry Abramson" as a co-defendant, but is silent with respect to his involvement in the case.  Rather, Green states that this action is "in opposition to Defendant's (Capt. Joseph Stuyvesant, Base Capt.) continuing barment of SG . . . ."  Complaint, Part I.  To recover under a <u>Bivens</u> theory, a plaintiff must state a claim for direct rather than vicarious liability.  <u>Simpkins v. District of Columbia Gov't</u>, 108 F.3d 366, 369 (D.C. Cir. 1997).  Thus, Green's failure to allege any facts against co-defendant Abramson mandates dismissal.

15

Complaint, Part IV.  If construed in this respect as an action in tort, Green's complaint should be

dismissed because he has failed to exhaust his administrative remedies as required by the Federal

Tort Claims Act, 28 U.S.C. §§ 1346(b) and 2671-2680.

It is a "long-settled rule of judicial administration that no one is entitled to judicial relief

for a supposed or threatened injury until the prescribed administrative remedy has been

exhausted." Myers v. Bethlehem Shipbuilding Corp., 303 U.S. 41, 50-51 and n.9 (1938) (citing

cases applying the rule).  "Whether courts are free to impose an exhaustion requirement as a

matter of judicial discretion depends, at least in part, on whether Congress has provided

otherwise[.]" Darby v. Cisneros, 509 U.S. 137, 144 (1993).  Supreme Court cases "have

recognized that exhaustion of administrative remedies is required where Congress imposes an

exhaustion requirement by statute." Coit Independence Joint Venture v. FSLIC, 489 U.S. 561,

579 (1989).  "If Congress itself imposes an exhaustion requirement, courts must enforce its

express terms. . . . In such cases, failure by a claimant to exhaust deprives federal courts of

jurisdiction." FDIC v. Scott, 125 F.3d 254, 257 (5th Cir. 1997); see also EEOC v. Lutheran

Social Services, 186 F.3d 959, 963 (D.C. Cir. 1999); Trafalgar Capital Assoc., Inc. v. Cuomo,

159 F.3d 21, 26 (1st Cir. 1998); Young v. Reno, 114 F.3d 879, 881 (9th Cir. 1997).

Under the Federal Tort Claims Act ("FTCA"), an action seeking money damages from

the United States for an injury or loss may not be initiated in a Federal Court "unless the

claimant shall have first presented the claim to the appropriate Federal agency and his claim

shall have been finally denied by the agency."  28 U.S.C. § 2675; see also McNeil v. United

States, 508 U.S. 106, 113 (1993) ("The FTCA bars claimants from bringing suit in federal court

until they have exhausted their administrative remedies."); Simpkins v. District of Columbia

Gov't, 108 F.3d 366, 371 (D.C. Cir. 1997) (quoting McNeil, 508 U.S. at 113) (plaintiff's failure

to exhaust administrative remedies deprived the court of subject matter jurisdiction).  Moreover,

the FTCA mandates that "[a] tort claim against the United States shall be forever barred unless it

is presented in writing to the appropriate Federal agency" within certain specified time limits.

28 U.S.C. § 2401(b); Kubrick v. United States, 444 U.S. 111, 117-18 (noting that courts are not

to extend this waiver of sovereign immunity beyond what Congress intended).

Assuming arguendo that this action is construed to sound in tort, the FTCA requires

Green to file an administrative claim prior to instituting this action.  28 U.S.C. § 2401(b).  Green

has offered no evidence, nor has he even asserted, that he has presented a claim under the FTCA

to either the Department of the Navy or the Department of Defense.  See generally Complaint.

Thus, if Green's claim is construed as sounding in tort, this Court lacks subject matter

jurisdiction because Green has failed to exhaust his administrative remedies.  Kubrick, 444 U.S.

at 117-18.[9]

## V.     GREEN'S ALLEGATIONS UNDER CALIFORNIA AND FEDERAL CRIMINAL LAW SHOULD BE DISMISSED FOR LACK OF SUBJECT MATTER JURISDICTION.

Green asks this Court to issue a declaratory judgment that he has a right – under

California law and under Federal law – "to file civil 'reckless disregard' and/or 'child

---

[9]Moreover, the government has not waived its sovereign immunity for constitutional torts, see Clark v. Library of Congress, 750 F.2d 89, 101-02 (D.C. Cir. 1984), or for any claim arising in a foreign country.  28 U.S.C. § 2680(k).  Additionally, under the FTCA, the United States is the only proper defendant.  Haddon v. United States, 68 F.3d 1420 (D.C. Cir. 1995).  Accordingly, any claims against the individual defendants would be inappropriate.

endangerment' charges . . . against the office of Base Capt., NAS, Sigonella . . . ."  Complaint,

Part IV.  These claims fail for two reasons.

First, consistent with their Article III obligations, Federal Courts have long refrained

from providing "advisory opinions" in matters that arise "under circumstances *which do not give

a cognisance of them to the tribunals of the country*."  Vieth v. Jubelirer, 541 U.S. 267, 302

(2004) (emphasis in original) (quoting 3 Correspondence and Public Papers of John Jay 486-

487).  Indeed, the Supreme Court has stated that such "advisory opinions" are "beyond their

power."  Id. (quoting John Jay at 487).  Yet by asking this Court to issue a declaratory judgment

setting forth Green's right to file other causes of action, Green would have this Court issue

precisely such an advisory opinion.

Second, the terms "reckless disregard" and "child endangerment" - - as employed by

Green - - appear to refer to criminal law concepts.  See generally People v. Valdez, 42 P.3d 511

(2002) (considering mens rea required for "child endangerment" under Section 273a(a) of the

California Penal Code).  But the appropriate parties to a criminal action are the criminal

defendant and the sovereign  - - in Green's Complaint, either the United States or the People of

the State of California.  See generally United States v. Lara, 541 U.S. 193, 197 (2004) (citing

Heath v. Alabama, 474 U.S. 82, 88 (1985) (noting that "the Double Jeopardy Clause reflects the

'common-law conception of crime as an offense against the sovereignty of the government'"));

see also United States v. Edmond, 924 F.2d 261, 269 (D.C. Cir. 1991) (noting that nothing in the

Double Jeopardy Clause prohibits the government from prosecuting a defendant for multiple

offenses) (emphasis added) (citations omitted).

Inasmuch as Green cannot, as a plaintiff in a civil matter, advance a criminal cause of action before this Court, he lacks standing to raise allegations of "reckless disregard" and "child endangerment."  See Lujan, 504 U.S. at 560 (noting that standing is an "irreducible constitutional minimum," one element of which is an "injury in fact."); see also Swan v. Clinton, 100 F.3d 973, 976 (D.C. Cir. 1996) (same).  Because the sovereign - - not Green - - sustains the "injury in fact" in a "reckless disregard" or "child endangerment" cause of action, Green lacks standing to raise these issues before this Court.  Accordingly, his Complaint should be dismissed under Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction.[10]

## VI.    IN THE ALTERNATIVE, THE COURT SHOULD ENTER SUMMARY JUDGMENT FOR THE DEFENDANTS BECAUSE THE ISSUANCE OF THE BARMENT ORDER WAS NOT ARBITRARY OR DISCRIMINATORY.

Should the Court elect to consider the merits of Green's complaint, the Defendants are entitled to summary judgment because there is no genuine issue as to any material fact, and the Barment Order was eminently reasonable.  As previously discussed, see Discussion, Section II.A, a Commanding Officer has broad discretion to exclude civilians from a military base.  See also Cafeteria & Restaurant Workers, 367 U.S. at 898.  So long as the Commanding Officer does not exercise that authority in a "patently arbitrary or discriminatory" manner, the Commanding Officer's decision should be sustained.  Id.

In this case, Stuyvesant properly denied a privilege – access to NAS Sigonella – to SG, a dependent whose sponsor was no longer in the Sigonella area.  Exhibit 3; Exhibit 5.  This course of action was neither "patently arbitrary" nor "discriminatory."  To the contrary, Stuyvesant's

---

[10] This argument applies with equal force to SG, on whose behalf Green brings the instant complaint.

Barment Order was fully consistent with the NATO SOFA - - a binding international treaty - - and the relevant local instruction.  More specifically, Green's lawful presence in Sigonella under valid military orders, Exhibit 4, extended certain privileges to his dependent family members, SG and Ms. Torok.  <u>See</u> Exhibit 2, ¶¶ 4 and 6.  But those privileges terminated, as did Green's "command sponsorship" of SG, when Green departed Sigonella on Permanent Change of Station orders in June 2005.  Exhibit 2, ¶¶ 4 and 9; Exhibit 5.

In short, all Stuyvesant did in issuing the Barment Order was to enforce the terms of the NATO SOFA and the relevant local instruction; he denied SG nothing, because SG was entitled to nothing.  Such a legitimate exercise of a commanding officer's authority is entirely reasonable, and is by no measure patently arbitrary or discriminatory.  Because there is no dispute as to any material facts in this case, and because Stuyvesant's exercise of authority in issuing the Barment Order was reasonable, and was not patently arbitrary or discriminatory, this Court should enter summary judgment for the Defendants under Fed. R. Civ. P. 56.

## <u>CONCLUSION</u>

For the reasons set forth herein, the Court should dismiss Green's complaint or, in the

alternative, enter summary judgment in the Defendants' favor.


/s/
JEFFREY A. TAYLOR, D.C. Bar No. 498610
United States Attorney


/s/
RUDOLPH CONTRERAS, D.C. Bar No. 434122
Assistant United States Attorney


/s/
MARIAN L. BORUM, D.C. Bar No. 435409
Assistant United States Attorney
United States Attorney's Office
555 Fourth Street, N.W., Civil Division
Washington, D.C.  20530


OF COUNSEL:
Thomas F. Leary, LCDR, JAGC, USN
General Litigation Division
Office of the Judge Advocate General
1322 Patterson Avenue, S.E., Suite 3000
Washington, D.C. 20374-5066

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this <u>18th</u> day of December, 2006, I caused the foregoing to be

served first class mail, postage prepaid, addressed as follows:

Marvin E. Green
PSC 808 Box 15
FPO AE 09618

and

Marvin E. Green
220 Pinckney Street, Apt. B
San Antonio, Texas 78209-6904


<u>/s/</u>_____
MARIAN L. BORUM, D.C. Bar No. 435409
Assistant United States Attorney

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **MARVIN GREEN,** | ) |
| **o/b/o the minor child SG,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | )    **Civil Action No. 06-1434 (RBW)** |
| | ) |
| **JOSEPH STUYVESANT,** | ) |
| **Captain, U.S. Navy, et al.,** | ) |
| | ) |
| **Defendants.** | ) |

**ORDER**

   This matter is before the Court on defendants' Motion to Dismiss, or in the Alternative, for

Summary Judgment.  Upon consideration of this Motion and the entire record of this case, it is this

_____ day of _____, 2007,

   **ORDERED** that Defendants' Motion to Dismiss should be and hereby is GRANTED.

_____
UNITED STATES DISTRICT JUDGE

Copies to:

Marian L. Borum
Assistant United States Attorney
Judiciary Center Building
555 Fourth Street, N.W., Room E4810
Washington, DC  20530

Marvin E. Green
PSC 808 Box 15
FPO AE 09618

and

Marvin E. Green
220 Pinckney Street, Apt. B
San Antonio, Texas 78209-6904