**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **MARVIN GREEN,** | ) |
| **o/b/o the minor child SG,**[1] | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | ) **Civil Action No. 06-1434 (RBW)** |
| | ) |
| **JOSEPH STUYVESANT,** | ) |
| **Captain, U.S. Navy,** | ) |
| | ) |
| **Defendant.** | ) |

**DEFENDANT'S MEMORANDUM IN OPPOSITION TO PLAINTIFF'S
<u>MOTIONS FOR TEMPORARY RESTRAINING ORDERS</u>**

The Defendant, through counsel, the United States Attorney for the District of Columbia,

hereby respectfully submits the following memorandum in opposition to Plaintiff's motions for

temporary restraining orders, Docket Entry Nos. 8 and 9.  Both motions should be denied

because Plaintiff cannot prevail under any of the four criteria required for a temporary restraining

order to issue.

---

[1] Although filed under the same Case Number as his initial Complaint, 06-1434, Green's
Motions for Temporary Restraining Orders are not captioned as being brought on behalf of SG, as
was the Complaint.  <u>Compare</u> Docket Entry 1 <u>and</u> Docket Entries 8 and 9.

## FACTUAL AND PROCEDURAL BACKGROUND

**I.    The Legal Status of American Personnel in Sigonella, Italy**

The parties to the North Atlantic Treaty, commonly referred to as NATO, have entered a Status of Forces Agreement ("SOFA") addressing "the status of . . . forces while in the territory of another Party."  NATO SOFA, Preamble, attached as Exhibit 1.[2]  That Agreement defines a "dependent" as "the spouse of a member of a force or a civilian component, or a child of such member depending on him or her for support."  Id.

Under regulations promulgated in accordance with the NATO SOFA, the Commanding Officer of Naval Air Station ("NAS"), Sigonella, Italy, may extend certain "privileges" to "command-sponsored family members."  See Exhibit 2.  Specifically, under NAS Sigonella Instruction 1754.2N of January 11, 2006, the Commanding Officer may allow a "family member whose sponsor is granted authorization . . . to reside in the vicinity of [the base]" to utilize "non-emergency medical . . . facilities."  Id., ¶¶ 4(a)-(c) and 6(j).  A "sponsor" includes a "[Department of Defense] civilian employee assigned to Sigonella, Italy under [Permanent Change of Station] orders."  Id.

Under NAS Sigonella Instruction 1754.2N, "[c]ommand sponsorship will automatically terminate when the sponsor detaches on [Permanent Change of Station] orders . . . ."  Exhibit 2, ¶ 9.

**II.    Green's Former Assignment in Sigonella**

Green was assigned "Civilian Permanent Duty" in Sigonella, Italy, in April 1997.  Exhibit 3, Block 5 (listing "reporting date" as on or about April 28, 1997) and Block 13 (listing ultimate

_____

[2] Available at http://www.nato.int/docu/basictxt/; last visited, December 12, 2006.

destination of Sigonella, Italy). He was accompanied by his spouse, Sophia Torok, and his son, SG. Id. After approximately 8 years in Sigonella, Green was reassigned to Naples, Italy, on June 21, 2005. Exhibit 4, Blocks 18a and 18b. His dependents, Ms. Torok and SG, were again authorized to accompany Green on this transfer. Id. at Block 19.

On June 27, 2006, more than one year after Green had been transferred from Sigonella to Naples, Captain Stuyvesant, the Commanding Officer of Naval Air Station, Sigonella, Italy, noted that "[Ms. Torok's] sponsor, Marvin Green . . . has officially transferred from Sigonella . . . ." Exhibit 5. Stuyvesant further observed that Ms. Torok and Green's son, SG, "failed to accompany [their] sponsor to his new duty station in Naples, Italy." Id. He further noted that under "Italian Immigration laws, the North Atlantic Treaty organization Status of Forces Agreement (NATO SOFA) and local instructions, command sponsorship for all approved family members terminates upon the transfer of the sponsor." Id. Accordingly, Stuyvesant barred Ms. Torok and SG from entering NAS Sigonella. Id.

Ms. Torok requested reconsideration on June 29, 2006. Exhibit 6. In support of her request, Ms. Torok cited the pendency of Civil Action No. 06-1009 before this Court, and a notification to Congressman Waxman regarding an alleged failure to follow due process. Id. Stuyvesant responded on July 5, 2006, and explained that his decision was based on several factors, including Ms. Torok's suspected drunk driving on the installation, her failure to cooperate with security personnel, her suspected violation of his order not to drive on the installation, and her failure to produce evidence that she had permission from the government of Italy to live and work in Sicily. Exhibit 7. Stuyvesant stated that neither the pending civil action nor Ms. Torok's correspondence with a congressmen were "relevant [to his] decision to bar [her]

from the installation."  Id.  Accordingly, Stuyvesant denied Ms. Torok's request for

reconsideration.  Id.

## III.    Green's Motions For Temporary Restraining Orders

The precise legal and factual bases on which Green relies to support his motions are not

entirely evident.[3]  The Defendant, however, interprets the gravamen of Green's first Motion for a

Temporary Restraining Order, Docket Entry No. 8, to be yet another challenge to the validity of

the Commanding Officer's Barment Order.  More specifically, Green appears to assert that the

Barment Order should be invalidated because Green was misinformed as to whether Ms. Torok

could remain in Sigonella even after Green had departed the area.  Green's second Motion for a

Temporary Restraining Order, Docket Entry No. 9, appears to similarly challenge the Barment

Order's validity, in this instance, because the Commanding Officer, Captain Stuyvesant, had not

adequately considered Ms. Torok's welfare, and not fully considered the allegations of

discrimination that she has raised to representatives of the Department of Defense Dependent

Schools - Europe ("DODDSE").  See also Docket Entry No. 9, Exhibit.

## <u>ARGUMENT</u>

## I.    GREEN LACKS STANDING TO BRING A CAUSE OF ACTION ON MS. TOROK'S BEHALF.

In order to establish Article III standing, a plaintiff must show that "(1) [he] has suffered

an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not

conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the

---

[3] A pro se plaintiff's pleadings are held to a less stringent standard; however for a plaintiff to prevail, it must still appear that he can prove some set of facts that would entitle him to relief.  See Estelle v. Gamble, 429 U.S. 97, 106 (1976).

defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." D&H Alfonso Realty Trust v. Garvey, 216 F.3d 1191 (D.C. Cir. 2000) (citing Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc., 528 U.S. 167 (2000); see also Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992)).  Third-party standing, or the right of a third party to advocate the rights of an individual not a party to the case, is generally disfavored: "a party must generally assert his own legal rights and interests and cannot claim relief on the legal rights or interests of others."  Kowalski v. Tesmer, 543 U.S. 125, 129 n.2 (2004) (quoting Warth v. Seldin, 422 U.S. 490, 499 (1975)).  This general rule, however, admits of exceptions when the litigant can demonstrate: (1) an injury in fact; (2) that the litigant has a "close relationship" with the non-party and (3) that there exists some hindrance to the non-party's ability to protect her own interests.  Powers v. Ohio, 499 U.S. 400, 410-11 (1991).

Docket Entry No. 9 advances claims of discrimination on behalf of Ms. Torok.  More specifically, Green alleges:

(1) "continuing infliction of injury upon Plaintiff's wife and child . . . ."  See Docket Entry No. 9, Part I;
(2) "discrimination that was being directed at Plaintiff's wife . . . ."  Id., Part II;
(3) "discrimination directed at Sophia Torok . . ."  Id., Part II; and
(4) "Plaintiff's wife . . . was the alleged victim of the asserted discrimination."  Id., Part III.

Green seeks relief based on these alleged transgressions and Stuyvesant's "participation in discrimination by issuance of the barment order."  Id., Part IV.  Thus, Docket Entry No. 9 seeks to advocate Ms. Torok's rights, not Green's.

However, Green has failed to articulate any justification why this Court should allow him to bring this action for Ms. Torok.  First, Green does not establish the requisite "injury in fact"

necessary for Article III standing.  Rather, Docket Entry No. 9 raises injuries alleged to have been sustained by Ms. Torok, and seeks the lifting of the Barment Order as the remedy to those injuries.  Green articulates no injury to himself or his interests.  See generally Docket Entry No. 9; cf. Powers v. Ohio, 499 U.S. at 411 (noting that "the litigant" must articulate "a 'sufficiently concrete interest' in the outcome of the issue") (citation omitted).  Second, although a "close relationship" might be assumed to exist between Green and Ms. Torok, Green has not alleged facts sufficient to draw such a conclusion.  Id.; see also City of Roseville v. Norton, 219 F. Supp. 2d 130, 144 (D.D.C. 2002) (noting that in considering a motion to dismiss for lack of standing, the Court must consider as true all material allegations in the complaint) (citation omitted), aff'd 348 F.3d 1020 (D.C. Cir. 2003).  Finally, Green has failed to allege any hindrance to Ms. Torok's ability to raise these issues to this Court, and has provided no explanation whatsoever for her absence in these proceedings.  See generally Docket Entry No. 9; see also City of Roseville, 219 F. Supp. 2d at 144 ("If there is some genuine obstacle . . . the third party's absence from court loses its tendency to suggest that [her] right is not truly at stake, or truly important to [her], and the party who is in court becomes by default the right's best available proponent.") (quoting Singleton v. Wulff, 428 U.S. 106, 116 (1976)).  Accordingly, Green's attempt to bring a third party cause of action on Ms. Torok's behalf should be dismissed.

## II.    GREEN IS NOT ENTITLED TO A TEMPORARY RESTRAINING ORDER.

### A.    Standards for Issuance of a Temporary Restraining Order.

A temporary restraining order ("TRO") is a drastic and extraordinary remedy, and the party seeking one bears a substantial burden of proof. American Coastal Line Joint Venture v. United States Lines, Inc., 580 F. Supp. 932, 935 (D.D.C. 1983); see also Yakus v. United States, 321 U.S. 414 (1944); Kahane v. Secretary of State, 700 F. Supp. 1162, 1165 (D.D.C. 1988). In considering a plaintiff's request for a TRO, a court weighs four factors: (1) whether the plaintiff has a strong likelihood of prevailing on the merits; (2) whether the plaintiff will suffer irreparable injury were the TRO not granted; (3) whether a TRO would substantially injure other interested parties; and (4) whether the grant of a TRO would favor the public interest. Wisconsin Gas Co. v. FERC, 758 F.2d 669, 674 (D.C. Cir. 1985); Virginia Petroleum Jobbers Ass'n v. FPC, 259 F.2d 921, 925 (D.C. Cir. 1958) (per curiam); Washington Metropolitan Area Transportation Comm'n v. Holiday Tours, Inc., 559 F.2d 841, 843-44 (D.C. Cir. 1977).

"These factors interrelate on a sliding scale and must be balanced against each other." Serono Labs., Inc. v. Shalala, 158 F.3d 1313, 1317-18 (D.C. Cir. 1998). Thus, if a plaintiff makes a particularly weak showing on one factor . . . the other factors may not be enough to compensate." Morgan Stanley DW Inc. v. Rothe, 150 F. Supp. 2d 67, 73 (D.D.C. 2001) (quotation marks omitted). Conversely, where the interests of the nonmoving party are so substantial- - as in this case, which implicates the authority of a military Commanding Officer to control access to the installation under his command - - the plaintiff must make a heightened showing of irreparable injury and likelihood of success on the merits. See, e.g., Hartikka v. United States, 754 F.2d 1516, 1518 (9th Cir. 1985) ("The necessity of making this stronger

7

showing is implicit in the magnitude of the interests weighing against judicial interference in the internal affairs of the armed forces.") (citing Sampson v. Murray, 415 U.S. 16, 83-84 (1974) and Orloff v. Willoughby, 345 U.S. 83, 93-94 (1953)). Notwithstanding this flexibility, the plaintiff must still demonstrate both likelihood of success and irreparable harm for a TRO to issue. District 50, United Mine Workers of Am. v. International Union, United Mine Workers of Am., 412 F.2d 165, 167 (D.C. Cir. 1969) ("A party seeking injunctive relief must show both that it will suffer irreparable harm if an injunction is not issued and that there is a substantial likelihood it will prevail on the merits when the case is tried.").

Green has not met his substantial burden to establish that injunctive relief is appropriate in this matter. Specifically, Green cannot establish (1) that there is a strong likelihood of prevailing on the merits; (2) that he or his minor son will suffer irreparable harm; (3) that balancing hardships, the issuance of an injunction will not substantially harm other interested parties; and (4) that the public interest favors the requested injunction.

**B.      Green Cannot Show A Likelihood Of Success on The Merits Because The Barment Order Was Properly Issued In Accordance With The Commanding Officer's Authority.**

The Supreme Court has recognized the unparalleled responsibilities of the military commander: "The responsibility of the commanding officer for his [or her] command is absolute. . . ." Cafeteria & Restaurant Workers Union, Local 473 v. McElroy, 367 U.S. 886, 891 (1961) (citing Navy Regulations codified at 32 C.F.R. § 700.802(a)). Such absolute responsibility and its concomitant authority clearly distinguish the military from civilian society in Supreme Court jurisprudence:

> This Court has long recognized that the military is, by necessity, a specialized society separate from civilian society. We have also recognized that the military has, again by necessity, developed laws and traditions of its own during its long history. The differences between the military and civilian communities result from the fact that "it is the primary business of armies and navies to fight or be ready to fight wars should the occasion arise."

Parker v. Levy, 417 U.S. 733, 743 (1974) (quoting United States ex rel. Toth v. Quarles, 350 U.S. 11, 17 (1955)).

The Commanding Officer is responsible for the "safety, well-being and efficiency of the entire command." 32 C.F.R. § 700.802(a); see also Cafeteria & Restaurant Workers, 367 U.S. at 891. Consistent with this unparalleled responsibility, a military commander's authority over military personnel and property under his or her command is also plenary and without analog in the civilian world. See, e.g., Greer v. Spock, 424 U.S. 828 (1976) (upholding regulations implementing commander's authority to bar civilians from distributing literature on base); Tokar v. Hearne, 699 F.2d 753 (5th Cir. 1983) (acknowledging that a commander's authority to exclude civilians from military bases is given great deference by the courts); United States v. Jenkins, 986 F.2d 76 (4th Cir. 1993) (approving a commander's authority to order random searches of all persons entering or exiting a military reservation – including civilians).

A military commanding officer must exercise his or her authority to exclude personnel from accessing an installation "by means consonant with due process of law." Cafeteria & Restaurant Workers, 367 U.S. at 894-95 (citing Homer v. Richmond, 292 F.2d 719, 722 (D.C. Cir. 1961)). The procedures required under due process are not, however, fixed or rigid. See Cafeteria & Restaurant Workers, 367 U.S. at 895; see also Tokar, 699 F.2d at 756 (court balanced individual's interest in accessing the base against commander's authority to maintain

discipline and order; government interest "greatly outweigh[ed]" the individual's).  To the contrary, "[w]here it has been possible to characterize [the] private interest . . . as a mere privilege subject to the Executive's plenary power, it has traditionally been held that notice and hearing are not constitutionally required."  Cafeteria & Restaurant Workers, 367 U.S. at 895 (citations omitted).

Stuyvesant's Barment Order advances a critical government interest that significantly outweighs Ms. Torok's and SG's interest in accessing NAS Sigonella.  Indeed, by precluding two dependents whose sponsor had long since left the Sigonella area, the Barment Order at issue here ensured, to the extent practicable, that Stuyvesant was not party to a violation of either the NATO SOFA or his own operative instruction.  See Exhibits 1-3 and 5.  Such an exercise of authority is fully consistent with a commanding officer's well-established authority to maintain good order and discipline at an installation under his or her control.  See Tokar, 699 F.2d at 756 (noting plaintiff's argument that the barment order also precludes her sons from accessing the base, but nevertheless holding that the government's interests outweighed hers and her sons'); see also 32 C.F.R. § 700.802(a) (Commanding Officer is responsible for the "safety, well-being and efficiency of the entire command").

Furthermore, Stuyvesant afforded Ms. Torok more process than was required under Cafeteria & Restaurant Workers, 367 U.S. at 894-896.  As previously noted, a person precluded from accessing a military installation is not constitutionally entitled to notice or a hearing.  Id. at 895.  Yet in the matter at bar, Stuyvesant afforded Ms. Torok an opportunity to respond to the Barment Order, Exhibit 3, of which she subsequently availed herself.  Exhibit 6.  Thus, Stuyvesant actually exceeded what the law required of him in rendering his decision.

Green's assertions that the Barment Order should be invalidated because Green was misinformed, see Docket Entry No. 8, and that Stuyvesant did not adequately consider Ms. Torok's welfare,[4] see Docket Entry No. 9, do not diminish the propriety of the Barment Order. Indeed, whether or not Green was properly advised of the implications of his transfer to Naples does not affect in the least the overarching responsibility and authority of a Commanding Officer to control access to a military installation. See 32 C.F.R. § 700.802(a); Cafeteria & Restaurant Workers, 367 U.S. at 891. Moreover, Stuyvesant did, in fact, consider Ms. Torok's interests as she articulated them in her request for reconsideration. Exhibit 6. Because Stuyvesant properly issued the Barment Order in accordance with his broad discretion as the Commanding Officer of NAS Sigonella, Green cannot demonstrate that he is likely to succeed on the merits, and his petitions for TROs must fail.

**C.      Green Cannot Show Irreparable Harm Because Neither He Nor His Dependents Have Been Deprived of Anything To Which They Are Entitled.**

To demonstrate irreparable harm, a plaintiff must show (1) that the injury is both certain and great, not something merely feared as likely to occur at some indefinite time and (2) that the injury is of such imminence that there is a "clear and present" need for relief to prevent it. Wisconsin Gas Co., 758 F.2d at 674; see also Sampson v. Murray, 415 U.S. 61, 88-90 (1974). Economic loss is insufficient to constitute irreparable harm unless the plaintiff's very existence is threatened. Wisconsin Gas Co., 758 F.2d at 674. "An injunction should not be issued unless the threat of injury is imminent and well-founded, and unless the injury itself would be incapable of

---

[4] This argument is raised in the alternative with respect to Ms. Torok. As discussed in Section II of this Memorandum, the Government maintains that Green lacks Article III standing to bring a cause of action on behalf of Ms. Torok.

being redressed after a final hearing on the merits." <u>Weick v. Sterenbuch</u>, 350 A.2d at 350, 388 (D.C. Cir. 1976) (emphasis added); <u>see also</u> <u>Wisconsin Gas Co.</u>, 758 F.2d at 674.

Here, Green does not articulate what irreparable harm he, his minor son, or Ms. Torok,[5] will suffer if the TROs are not granted.  In Docket Entry No. 8, Green challenges the validity of the Barment Order based on his having been misinformed as to the import of a transfer to Naples. <u>Id.</u>, Part IV (noting that "the inactions of [Stuyvesant's] juniors led to the conditions upon which the barment order is based").  Even assuming, <u>arguendo</u>, that Green's allegations are true, such an error or omission by one of Stuyvesant's subordinates does not in any way diminish the validity of the Barment Order.  Furthermore, Green, who is no longer even in Sigonella, <u>see</u> Exhibit 5, cannot be deemed to be at all harmed by the continued application of the Barment Order.[6]  As to Green's minor son, SG, and Ms. Torok, Green's transfer from Sigonella - - not the Barment Order - - denied them any claim of entitlement to access NAS Sigonella.  Exhibit 2, ¶ 9 ("[c]ommand sponsorship will <u>automatically terminate</u> when the sponsor detaches on [Permanent Change of Station] orders . . . .") (emphasis added).  Because Ms. Torok's and SG's claims of entitlement to access NAS Sigonella were coterminous with Green's presence in Sigonella, and because Green departed Sigonella, Green can demonstrate no harm – irreparable or otherwise – in the continued application of the Barment Order.

---

[5] The Government does not retreat from its assertion that Green lacks standing to bring a cause of action on Ms. Torok's behalf by considering her interests in this context.

[6] By its terms, the Order does not even apply to Green.  Exhibit 3 (addressed to "Mrs. Sophia V. Torok" and noting in the third paragraph that "you [Mrs. Torok] and your son are hereby barred from entering [NAS Sigonella]. . . .").

In Docket Entry No. 9, Green again challenges the validity of the Barment Order, this time by characterizing Stuyvesant's issuance of the order as "willing and reckless participation in discrimination."  Id., Part IV, Conclusion.  Discrimination may, in some instances, qualify as an "irreparable harm" amenable to the extraordinary remedy of a TRO.  See generally Wagner v. Taylor, 836 F.2d 566, 570-75 (D.C. Cir. 1987).  But in this instance, Green has again utterly failed to demonstrate any irreparable harm.  First, Green does not allege that either he or SG have been subjected to the discrimination which is the subject of Docket Entry No. 9.  Instead, Green improperly advances arguments regarding discrimination against Ms. Torok, and asserts that Stuyvesant was either negligent in not obtaining "relevant information" about Ms. Torok's allegations, or "reckless[ly] disregard[ed]" those allegations.  Docket Entry No. 9, Part III.  But as Stuyvesant appropriately noted, the NAS Sigonella Commanding Officer "ha[s] no jurisdiction" over allegations of discrimination arising in the DOD School System.  See Docket Entry No. 3, Exhibit 4 e-mail dated November 22, 2005 referenced in Docket Entry No. 9, Part II).  Other than this e-mail, Green offers no evidence or factual assertions linking the Commanding Officer's issuance of the Barment Order to Ms. Torok's allegations of discrimination in the DOD School System.  Green's position is a non sequitur: because Ms. Torok may have been the victim of discrimination by personnel within DODDSE, the Commanding Officer of NAS Sigonella – who is an uninvolved party without jurisdiction to consider her case – should allow her to access the base.  Such a position is insufficient to satisfy the irreparable harm requirement, and Green's request for a TRO should be denied.

The relevant rule is unequivocal - - command sponsorship automatically terminates when the sponsor detaches on Permanent Change of Station Orders.  The rule applies to everyone.

Plaintiff does not allege that others, not of Ms. Torok's protected class (whatever that may be), who were similarly situated to her, received preferential treatment with respect to access to the base. Thus, plaintiff has raised no claim of discrimination at all relevant to the matter at issue here - - the Barment Order.

> **D.     A TRO Will Substantially Injure the Military and Does Not Favor The Public Interest.**

"In exercising their sound discretion, courts of equity should pay particular regard for the public consequences in employing the extraordinary remedy of injunction." Weinberger v. Romero-Barcelo, 456 U.S. 305, 312 (1982). Where the public interest may be affected, the Court may withhold issuance of an injunction even at the cost of hardship to the petitioner. Id.; see also Marine Transport Lines, Inc. v. Lehman, 623 F. Supp. 330, 335 (D.D.C. 1985). Courts have consistently recognized that military decisions implicate interests of unusual importance. "'[T]he public has an interest, particularly in light of current events, in seeing that the [military's] discretionary decision making with respect to personnel decisions is effectuated with minimal judicial interference.'" Parrish v. Brownlee, 335 F. Supp. 2d 661, 675 (E.D.N.C. 2004) (quoting Irby v. United States, 245 F. Supp. 2d 792, 798 (E.D. Va. 2003); see also Guerra v. Scruggs, 942 F. 2d 270, 275 (4th Cir. 1991) ("[S]econd-guessing the military . . . 'would be a disruptive force as to affairs peculiarly within the jurisdiction of military authorities.'" (citation omitted)); Sebra v. Neville, 801 F. 2d 1135, 1139 (9th Cir. 1986) (noting the "well-established rule that the Government has traditionally been granted the widest latitude in the 'dispatch of its own internal affairs.'" (citing Sampson v. Murray, 415 U.S. 61 and quoting Cafeteria & Restaurant Workers, 367 U.S. 886)).

In the case <u>sub judice</u>, issuing a TRO regarding the Barment Order would significantly intrude upon a matter properly committed to a Commanding Officer's expertise and discretion – the management and security of the installation entrusted to his charge. These important interests, recognized by both regulation and judicial precedent, <u>see</u> 32 C.F.R. §700.802 and <u>Cafeteria & Restaurant Workers</u>, 367 U.S. at 891, significantly outweigh any interest that Green might advance. Protest as he might, Green cannot escape the fact that his transfer from Sigonella to Naples had the legal effect of depriving his dependents of any entitlement to access NAS Sigonella. <u>See</u> Exhibit 2. But the Barment Order does more than memorialize this legal reality; it also ensures the safety and security of those military and civilian personnel who require lawful access to NAS Sigonella. <u>See</u> Exhibit 7 (noting suspected drunk driving and suspected violation of Commanding Officer's order not to drive on the installation among reasons for imposing the Barment Order). For this Court to lift the Order would constitute an unwarranted intervention in this proper exercise of military authority, thereby injuring the military's interest in ensuring its Commanding Officers have sufficiently wide latitude to execute their regulatory responsibility for the safety and security of the installations under their control. <u>See</u> <u>Berry et al. v. Bean</u>, 796 F.2d 713 (4th Cir. 1986) (upholding barment order imposed on civilian based on possession of controlled substance and noting that 'civilians may be removed from military bases for a wide variety of reasons such as . . . carrying . . . a controlled substance . . . [or] violating a traffic regulation.') (quoting <u>United States v. Albertini</u>, 472 U.S. 675, 694 (1985) (Stevens, J., dissenting)).

Moreover, the public has no interest in the outcome of this case. Green does not challenge the inherent authority of a Commanding Officer to preclude personnel from accessing a

military installation.  <u>See</u> Docket Entry Nos. 8 and 9.  Instead, Green's petitions challenge one Commanding Officer's exercise of his discretion and authority on essentially equitable grounds – paraphrasing, the Barment Order should be lifted because Green was misinformed before departing Sigonella and because Ms. Torok was the victim of discrimination by DODDSE personnel.  But the relationship between these assertions, even assuming they are true, and the Barment Order is so tenuous as to render the public's interest in the outcome of this matter nonexistent.  Thus, Green cannot carry his burden with respect to the third and fourth prongs of the test for granting a TRO.

## CONCLUSION

WHEREFORE, Defendant submits that Plaintiff's Motions for Temporary Restraining Orders should be denied.

Respectfully submitted,


 /s/
JEFFREY A. TAYLOR, D.C. BAR # 498610
United States Attorney


 /s/
RUDOLPH CONTRERAS, D.C. BAR # 434122
Assistant United States Attorney


 /s/
MARIAN L. BORUM, D.C. Bar # 435409
Assistant United States Attorney
Civil Division
555 4th Street, N.W.
Washington, D.C. 20530
(202) 514-6531

OF COUNSEL:

Thomas F. Leary, LCDR, JAGC, USN
General Litigation Division
Office of the Judge Advocate General
1322 Patterson Avenue, S.E., Suite 3000
Washington, D.C. 20374-5066

## CERTIFICATE OF SERVICE

I hereby certify that on this 21st day of December, 2006, I caused the foregoing to be

served first class mail, postage prepaid, addressed as follows:

Marvin E. Green
PSC 808 Box 15
FPO AE 09618

and

Marvin E. Green
220 Pinckney Street, Apt. B
San Antonio, Texas 78209-6904


/s/
MARIAN L. BORUM, D.C. Bar # 435409
Assistant United States Attorney

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **MARVIN GREEN,** ) | |
| **o/b/o the minor child SG,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **Civil Action No. 06-1434 (RBW)** |
| ) | |
| **JOSEPH STUYVESANT,** ) | |
| **Captain, U.S. Navy,** ) | |
| ) | |
| **Defendant.** ) | |

**ORDER**

This matter is before the Court on Defendant's Memorandum in Opposition to Plaintiff's

Motions for Temporary Restraining Orders, Docket Entry Nos. 8 and 9.  Upon consideration of

Defendant's Opposition and the entire record of this case, it is this _____ day of

_____, 2007,

**ORDERED** that Plaintiff's Motions for Temporary Restraining Orders, Docket Entry Nos.

8 and 9, should be and hereby are DENIED.

_____
UNITED STATES DISTRICT JUDGE

19

Copies to:

Marian L. Borum
Assistant United States Attorney
Judiciary Center Building
555 Fourth Street, N.W., Room E4810
Washington, DC  20530

Marvin E. Green
PSC 808 Box 15
FPO AE 09618

and

Marvin E. Green
220 Pinckney Street, Apt. B
San Antonio, Texas 78209-6904