Marvin Green
220 PINCKNEY ST APT B
SAN ANTONIO TX 78209-6904
marvin.e.green@us.army.mil
C 210-389-6231, H 210-824-0959

In The

## District Court of the United States – District of Columbia

|  |  |
|---|---|
| MARVIN GREEN for SG,<br>　　　　　　Plaintiff,<br>v.<br>Capt. Stuyvesant,<br>　　　　　　Defendant. | ) Case No. <u>06-1434 RBW</u><br>)<br>) REQUEST FOR A FINDING<br>) ON THE QUESTION OF<br>) NEGLIGENCE<br>)<br>)　　DRAFT<br>)<br>)<br>) Date: February 7, 2007<br>) |

### I. INTRODUCTION

I made my second and third visit to St. Mary's Law Library last weekend where I discovered the facilitating joy of the Cos Juror books.

As if guided by the invisible hand of Abe Lincoln himself the term "Negligence" lead to the Latin term "Se In Sequester" and an appropriate and close fitting description of Captain Stuyvesant's responsibilities as a government official.

### II. STATEMENT OF FACTS - APPEALS

On or about October 2005 Sophia Torok was stopped and tested for possible DUI at the Sigonella base gate on her way in, to pick up SG who was

MARVIN GREEN for SG v. CAPT. STUYVESANT

returning from a school sports field trip. She was allowed to continue driving into and around the base at that time. Upon exiting the base she was stopped a second time and given a breathalyzer test. She is an asthmatic smoker. (Hospital pharmacy records confirm her purchase of asthmatic medicine.) She volunteered to take a blood test at the hospital emergency room which was about 6 blocks away. Sophia made documented references to SG's seizure disorder and the symptoms he was showing at the time of her breathalyzer testing.

The Captain convicted her of "Implied Consent" and imposed the exact same sentence as that for DUI (which is routinely applied to sailors – namely no driving in Italy for 1 year, period). Sophia appealed this "Implied Consent" conviction on and including the grounds of SG's welfare and SG's Sigonella Hospital documented seizure disorder.

On or about November of 2005 Sophia delivered an appeal of her "Implied Consent" conviction to Capt Stuyvesant - and this appeal's date and timeliness has not been disputed. This appeal contained several references to SG's seizure disorder and a connection to the hospital can be reasonably construed, (it being the only American service provider in the area), (exhibit - Implied Consent appeal attached).

On or about January of 2006, (at my urging), Sophia met with Sigonella Base legal assistant attorney Paige Ormistead requesting assistance in obtaining a response to her appeal.

MARVIN GREEN for SG v. CAPT. STUYVESANT

On or about April of 2006, (after a seemingly good faith effort on Paige's part in attempting to prompt a response to Sophia's appeal), Sophia wrote her congressperson, who:

On or about May of 2006 contacted the Base and then on or about early June asked if Sophia had received a response.

The "Implied Consent Conviction" appeal response was sent to Sophia via her attorney, Page Ormistead. Sophia will testify that the e-mail she sent to Paige asking what a CNRE is, (the next step in the appeal process), was not answered. Sophia will further testify that the final 5 or 6 calls she made to Paige's office asking for further information, were not returned. As poorly as this "Implied Consent" appeal response went – e-mail in "pdf" document format, (detailed in related case 06-1141), was or became the established method of serving it upon Sophia. It remains the only way Sophia has ever been successfully served. (Unless of course you count Ms. Borum's insertion of the Barment appeal response into this case as a valid serving).

In the "Barment" appeal response, Sophia has stated that she called the new SJA and spoke personally with him where he said: "I can't speak with you because your husband has filed a lawsuit". (This was before she became aware of a response to her appeal by virtue of Ms. Borum's actions.) This gave Capt. Stuyvesant's servant an additional reasonable opportunity to serve the appeal response upon Sophia instead of stating the real intent of

3

MARVIN GREEN for SG v. CAPT. STUYVESANT

the continuation of the barment order which is implied to be reprisal against her, (and harming SG), for my actions in filing this lawsuit.

On or before Mr. Borum's filing of a Non Disputation of Facts in this case I alerted her by e-mail of related case 06-1141 where I asserted that Sophia's "Implied Consent" appeal response was back dated. Implied in this backdating is my assertion that in oversleeping, (by his late response) – he by this negligence prevent himself from responding favorably to her appeal (in order to maintain his cover story in asserting that he did not respond tardily).

### III. ARGUMENTS

A. Argument that proof sufficient for a criminal proceeding has been supplied by Capt. Stuyvesant:

If you just take 3 documents that Capt. Stuyvesant has signed – the two appeal responses and the barment order – upon examination, they rise to the highest level of proof of negligence.

The Barment Order:

1. The barment order specifically bars SG from the base on the basis of his being her son while ignoring my rights and SG's rights as my dependent. It ignores previously presented DoD regulations which allow a minor to access alternate military base's on a space-available basis. Negligence is demonstrated in the order's preparation.

2. The "CCed" items at the bottom of the Barment Order, which include the hospital and the school, is particularly negligent in that Sophia's

4

MARVIN GREEN for SG v. CAPT. STUYVESANT

Implied Consent conviction, and it's appeal, both notified him of a seizure disorder - which implied SG had both a hospital and a school health related relationship that should have been inquired into prior to the barment of SG.

3. The CCing of the DoDDS School can only be ascribed as pointing to SG's barment as Sophia neither worked nor was in attendance there.

<u>Implied Conviction appeal response</u>:

The Captain knows she is the sole care provider for SG and yet completely ignores this. Had Captain Stuyvesant responded in a timely fashion he would have been free to take SGs welfare into account. By negligently responding tardily he had already ignored SGs welfare and was forced to defend a position now demanded by his negligent response in terms of timeliness.

## IV. CONCLUSION

.

Date: February 9, 2007

                                              DRAFT